# EMILY BROWN *v.* HUTZLER BROTHERS COMPANY.

*Action for Personal Injuries—Physical Examination of Plaintiff—Discretion of Court.*

In an action in which plaintiff alleged that her ankle was broken, her nervous system shocked, and other great, serious, and permanent injuries sustained as a result of defendant's negligence, it was within the discretion of the trial court to require plaintiff, under penalty of a non-suit, to go to the office of a physician named, to be there examined, by X-ray if necessary, the fees of the examining physicians to be paid by defendant, and the examination to be in the presence of plaintiff's own physician and her husband, if she so desired.

*Decided January 11th, 1927.*

Appeal from the Baltimore City Court (DUFFY, J.).

Action by Emily Brown against the Hutzler Brothers Company of Baltimore City. From a judgment of *non pros.,* plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*J. Cookman Boyd,* for the appellant.

*Walter L. Clark* and *Charles G. Page,* submitting on brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This appeal is from a judgment of *non pros.,* entered against the appellant, plaintiff below, in favor of the appellee, Hutzler Brothers Company.

It is alleged in the declaration, filed August 17th, 1925, that while the plaintiff was walking on the side walk and crossing an alley at the rear of defendant's building, belong-

ing to and used by the defendant for ingress and egress, "she stepped into a quantity of oil and grease negligently and carelessly dropped there by the defendant, and negligently and carelessly permitted to remain there by said defendant * * *. That as a result thereof she slipped and fell, and broke her left ankle at the joint in two places, her body was severely bruised, her nervous system shocked, she suffered great physical pain and mental anguish, she was put to great expense for medical attention, she has been prevented from attending to her usual avocations, and other great, serious and permanent injuries have been by her thereby sustained."

The defendant filed its plea, upon which issue was joined. On the second day of November, 1925, the defendant filed its petition asking the court to appoint some disinterested, competent, and reputable physician of Baltimore City, to make an examination of the plaintiff and to report to it the result of his examination as to her condition caused by the fall complained of.

The defendant in its petition called the attention of the court to the allegations of the declaration, wherein, among other things, it is alleged that the plaintiff, in consequence of the injuries received from said fall, "has been prevented from attending to her usual avocations and has sustained other great, serious and permanent injuries," and for the injuries so received she claims ten thousand dollars damages.

The petition also alleged that the defendant "has no information regarding the exact injuries sustained by the plaintiff, and no information indicating that the plaintiff's injuries were permanent or even serious, but on the contrary, is advised by the nurse in charge of its infirmary, who rendered first aid to plaintiff at the time the injury occurred, that she apparently twisted her ankle"; and that the defendant has, through its counsel, "made applications to the plaintiff's counsel for leave to have a physical examination made by some reputable and competent physician of Baltimore City," which request was refused, unless the defendant admitted liability for the injuries.

An affidavit was made to this petition and, upon the same day, the court passed the following order:

> "Ordered by the Baltimore City Court, that, unless cause to the contrary be shown on or before the 9th day of November, 1925, that Dr. George E. Bennett be appointed a special medical examiner for this court for the purpose of making an examination of Emily Brown. That the said physician shall make an examination of the plaintiff and shall make a report, in writing, to the court, said report to be filed as a part of the proceedings in this case, and shall submit himself as a witness at the trial of this case to be subject to cross-examination by both the plaintiff's and defendant's attorney, and that the fee of said physician for making the report and testifying shall be charged as a part of the costs in this case. Copy thereof to be served on attorney for plaintiff on or before the third day of November, 1925."

The plaintiff, on the ninth day of November, 1925, filed her answer to defendant's petition, in which the plaintiff denied the allegation of the defendant "that it has no information regarding the exact injuries sustained by the plaintiff, and no information indicating that the plaintiff's injuries were permanent or even serious," and averred that after the happening of the accident complained of, the plaintiff "was taken to the store of the defendant, where she was examined by the defendant's expert trained nurse and the nature of her injuries was made fully apparent to the said defendant, and that an examination by the defendant's doctor would result in nothing other than harassment to the plaintiff."

In her answer she admitted "that she did agree to subject herself to an examination by some reputable physician for the defendant, upon condition that the defendant would agree to a settlement based upon the finding of the defendant's medical examiner as to injuries sustained by the plaintiff." The contention is then made in the answer that the case was not one that warranted the appointment by the court of a physician to examine the plaintiff, but should the court hold other-

wise, the order should then "provide for some disinterested physician, selected by both the plaintiff and defendant, and, in default of agreement by this court, at such time as may be convenient to the plaintiff and in the presence of the plaintiff's physician, and that the cost of such examination, in any event, should be upon the defendant."

On the twenty-third day of November, the court passed its final order, by which it appointed Dr. George E. Bennett special medical examiner for the court, and authorized and directed him to make a physical examination of the plaintiff, and to report, in writing, to the court, with reasonable promptness, giving the result of such examination of the plaintiff, and to send copies thereof to the attorneys for the plaintiff and defendant; "and upon proper summons, to submit himself as a witness at the trial of the case and testify as an expert, appointed by the court, and be subject to cross-examination by the attorneys for the plaintiff and the defendant"; and that he be allowed reasonable fees for making the examination and for testifying in court and that such fee or fees shall be charged as part of the costs in the case.

On the nineteenth day of December, 1925, the defendant filed its second petition, in which it alleged that a copy of the order of the court passed on November 23rd, 1925, was transmitted to Dr. Bennett on the eleventh day of December following. Whereupon Dr. Bennett requested that the plaintiff be sent to his office, saying "in all probabilities it may be necessary to take an X-ray." This request of Dr. Bennett was forwarded by the defendant's counsel to plaintiff's counsel, with the suggestion that he make arrangements to have the plaintiff go to Dr. Bennett's office, "but the plaintiff's counsel refused and still refuses to do this, insisting that he is not willing that Mrs. Brown (the plaintiff), should be put to the trouble of going to the office of a doctor who is appointed at the suggestion of the defendant's attorney." In further reply to the above-mentioned request the plaintiff's counsel stated "that the plaintiff is willing to subject herself

to an examination by a physician appointed by the court for that purpose, at her own home."

The petition then alleges "that the defendant is advised and believes that there is no reason why the plaintiff should not go to the office of Dr. Bennett, except the unwillingness of her counsel to permit her to go. That the defendant is further advised and believes that a fair and complete examination of the plaintiff cannot be made at her home because of the impossibility of taking an X-ray." The petition then concludes with a prayer that the court "pass an order requiring the plaintiff to go to the office of Dr. G. E. Bennett to submit herself to the physical examination ordered by this court on November 23rd, 1925, and upon her failure so to do, that a judgment of non-suit be entered for the plaintiff. Upon this petition, the court, on the eighteenth day of December, passed the following order:

> "Ordered by the Baltimore City Court that Emily Brown, the plaintiff in this case, submit to a physical examination at the office of Doctor George E. Bennett, 4 E. Madison Street, Baltimore, Maryland, in accordance with the order of this court signed the 23rd day of November, 1925.
>
> "It is further ordered that unless the plaintiff shall submit to such examination or show cause to the contrary on or before the 31st day of December, 1925, a judgment of *non pros.* be entered against the plaintiff, provided, however, a copy of this order is served on the attorney for the plaintiff on or before the 24th day of December, 1925."

The three orders, above mentioned, were all signed by Judge Bond, then sitting in the Baltimore City Court

On December 30th, 1925, the plaintiff, in response to the order to show cause, filed her answer, in which she averred "that the convenience of the examining physician is not more to be considered than is the convenience of the plaintiff to be examined * * *. That Dr. Bennett is not skilled in the taking of X-ray pictures; that he does not himself take X-ray pictures, and this plaintiff is not willing to subject herself to

the taking of an X-ray picture by one not skilled therein. That it has not been the practice of the courts of this jurisdiction, or other jurisdictions, to require a plaintiff, unless by agreement of parties, to proceed to some particular place other than a suitable place acceptable to said plaintiff, for the purpose of submitting to a personal medical examination by a representative of the defendant or by some one appointed at the behest of the defendant, and said order is contrary to the accepted practice of this State." The answer also avers that "the plaintiff in this case is a mature woman, still nervous from the injury she received as a result of the injury, and nervous and apprehensive at being compelled to go to the office of a strange physician at such time as he should select, and submit herself to any examination that might be made therein, although willing, since the original order of this court, to afford said Dr. Bennett every facility in making of the examination at her own home at such time as would suit the convenience of said Dr. Bennett." The answer then concludes by saying "and she (the plaintiff) asserts that were such orders made permanent, it would be unreasonable, unjust, an abuse of discretion and an arbitrary exercise of a limited authority vested in the court, without due regards to the rights of the plaintiff."

On the twenty-fifth day of January, 1926, the defendant filed its motion for a judgment of *non pros.* against plaintiff, and on the second day of February following, the court (Judge Duffy then sitting in the Baltimore City Court) passed the following order:

"Upon the several petitions of the defendant filed November 2nd and December 18th, 1925, and the defendant's petition for a judgment of non-suit for failure to comply with the orders of this court, passed on November 2nd and December 18th, it is this 2nd day of February, 1926,

"Ordered by the Baltimore City Court that the orders of this court heretofore entered on November 2nd and December 18th, 1925, be and the same are hereby annulled and in lieu thereof, it is

"Ordered that Emily Brown, the plaintiff in this

case, shall, on or before the 8th day of February, 1926, submit to a physical examination at the office of Dr. George E. Bennett, 4 East Madison Street, Baltimore, Md., the said examination to be made by Dr. George E. Bennett, with the right on his part, if he deem it necessary, to have an X-ray or X-rays taken of the plaintiff by Dr. F. H. Baetjer, and the said Dr. George E. Bennett is required to make a report, in writing, to this court, with reasonable promptness, giving the result of such examinations of the plaintiff and to send a copy thereof to the attorney for the plaintiff and a copy thereof to the attorney for the defendant, and the said Dr. George E. Bennett shall, upon proper summons, submit himself as a witness at the trial of this case and testify as an expert appointed by the Court, and be subject to cross-examination by the attorneys for the plaintiff and the defendant.

"It is further ordered, that the fees of the said Dr. George E. Bennett and and Dr. F. H. Baetjer, shall be paid by the defendant.

"It is further ordered, that the plaintiff may, if she so desires, be accompanied to the office of Dr. Bennett by her husband and her family physician, who have a right to be present when the examination is made."

Thereafter, on the twentieth day of February, the defendant renewed his motion for a judgment of *non pros.* and a judgment was so entered against the plaintiff in favor of the defendant for costs. It is from that judgment that the appeal in this case was taken.

We have stated, at considerable length, the facts alleged in the petitions and answers of the parties to this suit, and have set out in full the different orders passed by the court. This we have done to show the contention of the plaintiff as to the passage of such orders, and likewise to show the extent to which the court went to meet the objections urged by the plaintiff to the passage of an order, directing the plaintiff to submit to a physical examination by a physician appointed by the court to ascertain the character and the extent of her

injuries, claimed to have been sustained by her as a result of her alleged fall.

The law of this state as to the power of the court to require the plaintiff to submit to such an examination is stated in *United Rys. & Elec. Co. v. Cloman,* 107 Md. 690, where this Court, speaking through the late Chief Judge Boyd, said: "The authorities are conflicting on the subject. It is said that there is no record in the English reports of such an order, or even of such a motion. In the federal courts it is held that the court has no power to compel a plaintiff in an action for personal injuries to submit his person to a physical examination, and it was so decided in *Union Pac. Co. v. Botsford,* 141 U. S. 250. The weight of authority seems to be to the contrary, in the state courts of this country, although, while the power is admitted, many cautions and limitations are suggested, and the general rule is that it cannot be demanded as a matter of right by a defendant, but the application is addressed to a sound discretion of the trial court, which will not be interfered with by an appellate court unless such discretion was manifestly abused. That seems to us to be the correct view. We cannot admit that the trial court has no such power in any case, for sometimes it may be apparent that a plaintiff is feigning, and has not suffered such injuries as he pretends he has sustained. Instances are not unknown to courts and counsel, who have had experience in such cases, in which jurors have been imposed on, and sometimes even reputable physicians, who have been called upon to testify on behalf of plaintiffs, have been deceived. When therefore the ends of justice seem to require it, there can be no valid reason why an examination should not be permitted, if seasonable application is made, and the court is satisfied that no serious physical or mental injury is likely to be done the plaintiff. Unless consent is given by the plaintiff to have the examination made by physicians of the defendant, the safe course is for the court to name some disinterested physician or physicians to make such examination, * * *. The practice of permitting such an examination would have a tendency to prevent frauds which are sometimes per-

petrated by dishonest plaintiffs in actions for personal injuries. * * * The court should be satisfied that the application is made in good faith and not merely to affect the jury, in case of refusal to submit to the examination."

In the more recent case of *Scheffler v. Lee,* 126 Md. 373, the plaintiff refused to submit to the examination ordered by the court, upon the ground that her person was inviolate and that same under no circumstances should be exposed to any physician or any other person against her consent. In consequence of such refusal, a judgment of *non pros.* was entered, as in this case, against the plaintiff for defendant's costs. Which judgment on appeal was affirmed by this Court.

These cases fully establish the power of the court, in its discretion, to pass such an order and to enter a judgment of *non pros.* against the plaintiff, when he refuses to comply therewith.

The plaintiff in her answer to the *nisi* order of the court passed on November 2nd, 1925, admitted that she "agreed to be examined by some reputable physician for the defendant upon the condition that the defendant would agree to a settlement based upon the finding of the defendant's medical examiner, as to the injuries sustained" by her, though she contended that it was not a case that warranted the passage of an order for an examination of the plaintiff, but if the court thought otherwise, then the order should name a disinterested physician to be selected by both the plaintiff and the defendant, and the examination to be made at a time convenient to the plaintiff and in the presence of her physician. The costs of such examination to be paid by the defendant.

The final order of the court passed on the twenty-third day of November, 1925, did not in its provisions differ materially from the *nisi* order of November 2nd, 1925.

The court's order of December 18th, 1925, passed after the plaintiff's refusal to go to the office of Dr. Bennett, as requested by him, directed her to go to his office for examination within the time therein named, and if she failed to do so, a judgment of *non pros* would be entered against her.

The day before the expiration of the time mentioned in the

last-named order, the plaintiff again petitioned to the court, protesting against the carrying out of the order of December 18th, which petition we have already set out in full.

Thereafter, Judge Duffy, then sitting in the Baltimore City Court, passed the order of February 2nd, 1926, the one from which this appeal is taken, annulling the orders of November 2nd and December 18th, and to meet some of the objections of the counsel for the plaintiff, the court inserted in his order the following provisions:

(1) That Dr. Bennett, if he thought it necessary, was authorized to have an X-ray or X-rays taken by Dr. F. H. Baetjer, one of the leading physicians in this country in this line of work; (2) that the fees of Dr. Bennett and Dr. Baetjer should be paid by the defendant; and (3) that the plaintiff in her visit to the office of the physician, might, if she so desired, be accompanied by her husband and her family physician, to be present at the examination.

This order granted every request of the plaintiff, except the one that she should not be required to go to the office of a physician for examination, but be examined at home. To require the plaintiff to go to the office of a physician for examination, is said by the plaintiff's counsel to be "harsh, cruel and oppressive."

As alleged in the declaration, the plaintiff's ankle was broken at the joint in two places, and as a result of the injuries received by her, her nervous system was shocked and "other great, serious and permanent injuries" were thereby sustained.

It may have been that the character of the injuries was disclosed to the defendant by the nurse who saw and examined the injuries at the time of the accident, but it would seem that the defendant was entitled to know the condition of these injuries four months thereafter, when the petition was filed, asking for an examination by a disinterested physician; especially in view of the allegation that such injuries were permanent. But, to say the least, we are certainly not warranted in holding that, with the facts and circumstances

before the court, it abused the discretion lodged in it by ordering the examination of the plaintiff. The same, we think, may be said as to the court's action in directing the plaintiff to go to the office of the physician named in the order, for such examination. The order permitted both her husband and her family physician to accompany her to the office of the physician and to be present at the examination, and it would, we think, be going very far to hold that such requirement, under the facts and circumstances mentioned, was harsh, cruel and oppressive. The very character of the injury, a broken bone, rather suggested an X-ray examination, to ascertain the condition of the injuries at that time, and such examination could not well have been made at the home of the plaintiff. This fact necessitated her going to the office of the physician where the X-ray machine was located.

As we find no error in the action of the court in passing the order for a judgment of *non pros.,* the judgment will be affirmed.

*Judgment affirmed, with costs.*