# Heilig v. Harrisburg Railways Company

*Wickersham & Wickersham*, for plaintiff; *Arthur H. Hull*, for defendant.

HARGEST, P. J., January 4, 1932.—This case involves the right of the court to dismiss or non pros. a suit where the plaintiff refused to submit to a physical examination and died without such examination having been made and his administratrix has been substituted as party plaintiff.

The plaintiff brought suit, averring that he was injured while a passenger on one of the defendant's cars, and alleged that, in addition to other injuries, the nerves controlling his eyesight were permanently injured to such an extent that within five days thereafter he became totally blind.

The suit was brought prior to August 28, 1929, on which date the plaintiff's statement was filed. The case was on the trial list for the November Term, 1930. An effort was made to have the plaintiff submit to a physical examination, and the defendant arranged with Dr. George Gracey and Dr. George H. Seaks, eye specialists, and Dr. Jesse L. Lenker, a general practitioner, for such an examination at the office of Dr. Gracey, Monday, October 17, 1930, at 5 o'clock P. M. The plaintiff did not appear. Upon his refusal to submit to a physical examination the case was continued for cause. Shortly thereafter, November 26, 1930, the defendant presented its petition for a rule to show cause why the plaintiff should not submit to a physical examination. On December 15, 1930, no answer having been filed, the court, being advised by counsel for the defendant that the plaintiff was sick, postponed making an order until the plaintiff was able to appear. The plaintiff caused the case to be placed on the trial list for the court beginning January 26, 1931. On January 15th counsel for the defendant arranged for an examination at the office of Dr. Gracey, Monday, January 19th, at 5 o'clock P. M., but the plaintiff failed to appear. On January 23rd the court made the rule absolute and directed the plaintiff to appear at the office of Dr. Gracey on January 26, 1931, at 5 o'clock P. M. The plaintiff failed to appear and the case was continued for cause. On February 9th counsel for the defendant wrote to counsel for the plaintiff, stating that he would arrange with the doctors for an examination if the plaintiff would submit to such examination, but the record does not show that anything came of that suggestion. On March 10th counsel for the defendant again wrote counsel

for plaintiff, asking him to advise the claim agent of the defendant company when Mr. Heilig would be able to appear, and that an examination would be arranged for at Dr. Gracey's office. The plaintiff caused the case to be listed for the April Term, 1931. On April 8th counsel for the defendant again wrote counsel for the plaintiff that "if you will advise me that Mr. Heilig will appear for examination I will make the necessary arrangements. Otherwise I shall be obliged to move to continue the case." It was again continued for cause. On April 20, 1931, the court advised counsel for the plaintiff that unless the plaintiff appeared for a physical examination at least ten days before the trial the case would be non prossed. Thereupon an arrangement was made for an examination May 12, 1931, at the office of Dr. Gracey, at which Dr. Lenker and Dr. Gracey were present, and the plaintiff again failed to appear. On May 21, 1931, the defendant presented a petition for judgment of non pros., whereupon the court ordered that unless the plaintiff appeared at the office of Dr. Gracey for examination within five days, at a time to be agreed upon, a petition for judgment of non pros. would be entertained. Pursuant to that order the claim agent of the defendant notified plaintiff's counsel that arrangements had been made with Dr. Gracey, Dr. Lenker and Dr. Seaks for an examination at Dr. Gracey's office May 25, 1931, at 5 o'clock. The plaintiff and his counsel appeared at Dr. Gracey's office. Dr. Gracey was delayed at the Harrisburg Hospital and the plaintiff's counsel left before he appeared. Dr. Gracey and Dr. Seaks being present, Dr. Gracey started the examination for the purpose of determining whether the plaintiff's condition was the result of an injury or whether he had glaucomatous cataracts.

To make such examination it was necessary to use a delicate instrument called the "tonometer" to determine the tension of the eye. To use the tonometer it was necessary to put in each eye three drops of holocain, which is a local anesthetic, something like a weak solution of cocaine. Dr. Gracey had put in the first drop and was about to apply the second when the patient refused to allow such application, complaining that it caused him to suffer pain. The physicians explain that the pain was a little sting about as painful as when a drop of pure water is put in the eye. The patient refused to permit the examination. He also refused to permit Dr. Seaks to conduct an examination. Dr. Seaks then left and Dr. Gracey, after some further discussion, also left the room. About that time the patient called Dr. Gracey to come back, which he declined to do, inasmuch as Dr. Seaks was not then available. Dr. Lenker was subject to call but had not been summoned by telephone.

On May 27th a new petition to dismiss the action was presented and a rule granted thereon. On September 14, 1931, the death of the plaintiff was suggested on the record and Sarah A. Heilig, administratrix, was substituted as the plaintiff.

We have made a very full statement of the facts to indicate the resistance of the plaintiff to any reasonable examination. Many cases have discussed the development of the rule requiring a plaintiff in a suit for personal injuries to submit to a physical examination. Some of these cases may be found collected in City of South Bend et al. v. Turner, 156 Ind. 418, 54 L. R. A. 396, 400 (1901), and in Western Glass Mfg. Co. v. Schoeninger, 42 Colo. 357, 94 Pac. 342, 344 (1908).

The power of the court to direct a physical examination is settled in Pennsylvania. The defendant does not have the right to such examination as a matter of course. Whether it will be ordered is within the discretion of the court: Lawrence v. Keim, 19 Phila. 351 (1888) ; Twinn v. Noble, 270 Pa. 500; Schroth et ux. v. Phila. R. T. Co., 280 Pa. 36.

But the question before us is not whether the court has the authority to order the examination, but how its order may be enforced. In Cohen v. Phila. R. T. Co., 250 Pa. 15, 17, it is said:

"We entertain no doubt of the right of a court, when one sues for alleged injuries to the person, to afford the defendant a proper opportunity to have a physical examination of the plaintiff made by skilled medical men. Of course, the court cannot order a plaintiff to submit to such an ordeal against his will, but it can, and, where the ends of justice so require, should refuse to permit the case to proceed until the plaintiff undergoes an examination."

This petition to dismiss the case goes further than any Pennsylvania case has yet gone. We do not understand that the language of Cohen v. Phila. R. T. Co., supra, just quoted, means that a refusal to permit the case to proceed is the only remedy which the court has to enforce its order. It is one of the remedies.

It is suggested by the plaintiff that, inasmuch as this suit was brought prior to August 28, 1929, and no application for a physical examination was made until November, 1930, the defendant was guilty of laches. Hocker v. Harrisburg Traction Co., 5 Dauph. Co. Reps. 62, is cited to sustain this contention. In that case the court declined to order a physical examination because the defendant omitted to ask for such examination for more than a year after the injury and until the time fixed for the trial of the cause was at hand. That case has been disregarded in practice in this court, and we now distinctly overrule it and hold that the defendant may ask for a physical examination at any reasonable time prior to the trial. If a plaintiff chooses to delay the trial of his cause for a year, there is no reason why the defendant should not have the right, before the trial proceeds, to a physical examination of the plaintiff when permanent injuries are alleged.

The present petition also involves the question whether the defendant was required to submit himself to an examination by a tonometer which required the application of three drops of a mild anesthetic in each eye. Modern medical science is constantly developing. When the right of the court in its discretion to order a physical examination was first announced, X-rays were unknown. A number of cases have discussed the power of the court to require a plaintiff to submit himself to an X-ray examination. Originally, before science had sufficiently advanced to justify the courts in taking judicial notice that exposure to X-ray was not injurious to the subject, the courts hesitated to make such an order: Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141 (1899). But it is now held that the courts may take judicial notice that the X-ray is in common use and that the science and art thereof have developed to a point where in the hands of a specialist there is little or no danger: Gilbert v. Klar, 223 App. Div. 200, 228 N. Y. Supp. 183 (1928); Brown v. Hutzler Bros. Co., 152 Md. 39, 136 Atl. 30, 51 A. L. R. 177 (1927).

In Flythe et al. v. Eastern Carolina Coach Co. et al., 195 N. C. 777, 143 S. E. 865, 867, it is held that it is for the court to determine after due consideration of the grounds of objection, if any, made by the plaintiff whether an X-ray examination should be held.

In this case the plaintiff objected to the use of a mild anesthetic, and we are cited to the case of Hess v. Lake Shore & Mich. So. R. R. Co., 7 Pa. C. C. 565, 567 (1890), in which Judge Gunnison said:

"The examination should, however, be conducted in such a manner as to avoid the infliction of pain, the subjection to indignity, or the endangering of health or life. No anæsthetics, opiates or drugs should be administered."

We cannot fully adopt this language. In the present case the mild anesthetic would have prevented pain. It was necessary to use it in order to make the examination which was required to be made, that is, to determine whether the

plaintiff's blindness was caused by glaucoma or by an injury. It could not have hurt the plaintiff, and, therefore, he ought to have submitted himself to what was, in the development of science, a proper examination. The doctors selected for the examination are well known to the court and are of the highest professional standing. Perhaps the court would have selected the same doctors if it had been required to choose them. We are, therefore, of opinion that the plaintiff was not justified in refusing to submit to the examination because there was a mild anesthetic required. The plaintiff resisted at every point. There were many appearances before the court. One objection was made in open court to going to Dr. Gracey's office, and it was stated that the court would take judicial notice that such a delicate test as that required to be made of the eyes could not be satisfactorily made elsewhere than at the office of a specialist in that line.

The plaintiff, therefore, having refused to submit himself to a reasonable examination, does the court have power to dismiss the proceeding?

In the case of Hess v. Lake Shore & Mich. R. R. Co., supra, Judge Gunnison said:

"Indeed, compliance with such an order has sometimes been enforced by dismissing the plaintiff's case entirely upon his refusal to comply."

In Schroeder v. C. R. I. & P. R. Co., 47 Iowa 375, 381 (1877), after speaking of the refusal of the plaintiff being an impediment to an administration of justice and a contempt of the court's authority, the court said:

"Should such recusancy too long delay the court or prove an effective obstruction to the progress of the case, the court could have stricken from the pleadings all the allegations as to permanent injury and withdrawn from the jury that part of the case."

In Miami & Montgomery Turnpike Co. v. Baily, 37 Ohio St. 104 (1881), it is held:

"On the refusal of the plaintiff to comply with such order, when properly made, the court may dismiss the action or refuse to allow the plaintiff to give evidence to establish the injury."

In Shepard v. Mo. Pac. Ry. Co., 85 Mo. 629, 55 Am. Rep. 390, 391 (1885), the court said:

"Certainly, if the court can make the order, it will have no difficulty in enforcing it. Not that it can compel the party to submit to a personal examination, but it may dismiss a plaintiff's suit for a persistent refusal to do so."

In City of South Bend et al. v. Turner, 156 Ind. 418, 429, 60 N. E. 271, 83 Am. St. Rep. 200, 54 L. R. A. 396, 401 (1901), after reviewing the authorities, the court laid down six principles deduced from them, the sixth of which is as follows:

"That such order may be enforced, not by punishment as for a contempt, but by delaying or dismissing the proceeding."

In Western Glass Co. v. Schoeninger, 42 Colo. 357, 94 Pac. 342, 345 (1908), the court plagiaristically deduced the same six propositions and concluded with the sixth that the order might be enforced "by staying or dismissing the action."

In Scheffler v. Lee, 126 Md. 373, 94 Atl. 907 (1915), the plaintiff refused to submit to an examination ordered by the court, and it was held that a judgment of non pros. was properly entered.

It rarely happens that we find a reported case that fits the case under consideration so well as the case of Brown v. Hutzler Bros. Co., 152 Md. 39, 136 Atl. 30, 51 A. L. R. 177, fits the instant case. In that case a rule was granted on the plaintiff to show cause why she should not submit to an examination, and, after hearing, a final order was made requiring such submission before Dr. George E. Bennett. The plaintiff evidently declined to appear at Dr. Bennett's office.

The defendant presented a petition including a request of Dr. Bennett that she appear because "in all probability it may be necessary to take an X-ray." The plaintiff's counsel refused to have her appear. It was then peremptorily ordered that she submit to a physical examination at the office of Dr. Bennett and that unless she did, or show cause to the contrary, a judgment of non pros. would be entered. The plaintiff filed an answer. Later the defendant filed its motion for a judgment of non pros., and thereupon a further order was made that she submit to a physical examination at the office of Dr. Bennett and, if he deem necessary, he was to have an X-ray taken by Dr. Baetjer. The plaintiff refused and final judgment of non pros. was entered and, upon appeal, sustained on the ground that the order was a reasonable exercise of the discretion of the court.

From this abundance of authorities, we entertain no doubt of our right to dismiss this proceeding. The order for the examination was reasonable, the doctors selected for it were of the highest standing in their profession, the examination itself was reasonable. The plaintiff was stubborn and recalcitrant. If the plaintiff were alive we would be justified in dismissing this proceeding, but owing to his own obstinacy no examination was made and he has died without preserving any evidence as to the cause of his injury. The defendant was entitled to have that evidence by a physical examination. It cannot be secured. No good will come of continuing the case. It would be an injustice to try it, the plaintiff having himself prevented a reasonable and proper physical examination.

For these reasons, the petition to dismiss must be sustained.

Now, January 4, 1932, the petition of the defendant to dismiss the action on the ground that the plaintiff refused to submit to an examination is hereby sustained and the action is dismissed.

From Homer L. Kreider, Harrisburg, Pa.