THE PEOPLE *ex rel.* John E. W. Wayman, State's Attorney, Appellant, *vs.* LEROY T. STEWARD *et al.* Appellees.

*Opinion filed February 25, 1911—Rehearing denied April 5, 1911.*

1. CONSTITUTIONAL LAW—*physical examinations are not generally regarded as "searches" of the person.* Physical examinations to ascertain the fitness of persons for discharging public duties, such as those of a police patrolman, are not generally regarded as "searches," within the meaning of section 6 of article 2 of the constitution; but even if so regarded, it is not a violation of such section to require persons to submit to such examinations if they desire to become or to continue to be police patrolmen.

2. OFFICERS—*physical examination to ascertain fitness of police patrolman is not unreasonable.* A physical examination by the superintendent of police to ascertain the physical condition of an active police patrolman is not an unreasonable requirement, even though it be regarded as a search of the person within the meaning of the constitution, as no one has a constitutional right to be a police patrolman, and if he desires to be one he must submit to the reasonable regulations under which he is admitted to service.

3. SAME—*fact that physical examination may result in charge of incapacity does not make it unreasonable.* The facts that a physical examination of a police patrolman may result in a charge of incapacity being preferred against him, and that if he refuses to abide by the regulation and take the examination he will subject himself to a charge of insubordination, do not render such examination unreasonable or a violation of the constitutional rights of the patrolman.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

A. D. GASH, for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, and CLYDE L. DAY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By leave of court granted, in pursuance of an affidavit of Jeremiah Cronin and others, who were police patrolmen of the city of Chicago, an information in the nature of *quo*

*warranto* was filed in the circuit court of Cook county in the name of the People, on the relation of the State's attorney, against the city of Chicago and the superintendent of police, requiring the defendants to answer by what warrant they claimed to hold and execute the right and privilege of compelling police patrolmen to submit to a physical and medical examination by a board of physicians and expending moneys of the city for that purpose. The defendants filed a plea, which was demurred to by the relator, and the demurrer being overruled, the relator elected to stand by it and there was judgment for the defendants. An appeal to this court was allowed on the ground that a constitutional question was involved in the decision of the case.

The act to provide for the incorporation of cities and villages, under which the city is organized, authorizes the city council to regulate the police of the city, to pass and enforce all necessary police ordinances, and to prescribe the duties and powers of a superintendent of police, policemen and watchmen.

The following facts are alleged in the plea and admitted by the demurrer: On March 20, 1905, the city council passed an ordinance establishing the department of police, embracing a superintendent of police, patrolmen and other employees and creating the office of superintendent of police. The ordinance provided that the superintendent should have the management and control of all matters relating to the department, its officers and members; that all members of the department should be subject to such rules and regulations as should be prescribed, from time to time, by the superintendent; that he should hear and determine all cases not under the jurisdiction of any trial board for the violation of any rule, regulation or other breach of discipline, and that the superintendent should be the head of the police department, with full power and authority over the same, subject to the laws of the State and the rules of the civil service commission. The Civil Service act was adopted by

the city, and the civil service commission adopted certain rules, one of which provides that the head of the department may file charges against any officer, which shall be investigated by the commission or some board appointed by it, and that notice shall be served upon the officer and he shall be given an opportunity to be heard in his own defense. It is the duty of the superintendent of police to enforce strict discipline, and to ascertain, by physical and medical examination conducted under his direction from time to time, whether active patrolmen are able to perform the duties required of them, to the end that he may make assignments of patrolmen to such duties as they shall be physically able to perform, and that if any are permanently or totally incapacitated he may prefer charges of physical incapacity against them before the civil service commission, in order that an investigation may be made as required by law. An appropriation was duly made for the expense of such examination.

The information charged that the police patrolmen named therein, and who made the affidavit upon which leave to file the information was granted, were appointed under the provisions of the Civil Service act. The power of the civil service commission to require a physical and medical examination of an applicant for a position on the police force is not denied, and counsel for the relator says that patrolmen must necessarily submit to such examination, but he contends that after such examination there is no power granted by the statute for a subsequent examination. It is also admitted that the civil service commission has power, under section 12 of the Civil Service act, to try a patrolman upon a charge duly presented alleging that he has become incapacitated or unable to do the work prescribed for him, but it is contended that there is no power in the superintendent of police to require a physical and medical examination for the purpose of securing evidence of the incapacity or inability of the officer to perform his

duties, which may afterwards be made the subject of such a charge. The ground of that claim is, that an examination which requires a patrolman to remove his clothing is an invasion of his constitutional right secured by section 6 of article 2 of the constitution, which provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." The substance of the proposition of counsel is, that while one who has become physically unable to perform the duties of a patrolman may properly be dismissed from the service by the civil service commission on a charge of that nature, the constitution prohibits the superintendent of police from ascertaining, by the only practical and available means, whether the condition exists.

The immunity of the citizen guaranteed by the constitution is against unreasonable searches, and the courts have never looked upon a physical examination to determine the fitness of a person for a particular service as a search within the meaning of the constitutional provision. The history and purpose of the provision, and its close relation to the other provision of the same article that no person shall be compelled in any criminal case to give evidence against himself, were reviewed at considerable length by the Supreme Court of the United States in *Boyd* v. *United States,* 116 U. S. 616, where extensive quotations were made from the opinion of Lord Camden in *Entick* v. *Carrington,* 19 Howell's St. Tr. 1029. There is not in that case, or any other of which we have knowledge, any rule or principle by which the constitutional provision can be applied to the situation here. The physical examination under the direction of the superintendent of police, which will enable him to exercise his powers and discharge his duties, is not different in any respect from an examination for military service or admission to the military or naval school of the government, or any other examination conducted for the purpose of ascertaining the qualifications of a person to perform

some particular duty or fill some particular position. The
case of a policeman is like that of a soldier, where physical
ability is a necessary and material part of an examination;
and this is practically conceded by counsel in his admission
that such examination may be made by the civil service
commission in passing upon the qualifications of applicants.
If such an examination is one that is prohibited by the con-
stitution as unreasonable, it would be no less unreasonable
when conducted by the civil service commission than when
required by the superintendent of police. The constitution
does not secure to any person the right to be a policeman,
and if he desires to be one he must submit to the orders
and regulations under which he is admitted to the service.
The examination is not for the purpose of obtaining evi-
dence to be used against the patrolman in a criminal prose-
cution, and it is not necessarily for the purpose of securing
evidence upon which to base a charge of incapacity. It is
the duty of the superintendent to maintain a capable and
efficient police force, and as the duties of policemen are
various and require different degrees of physical strength,
an examination would enable the superintendent to assign
a policeman to a position where he could perform the duties
required of him. It is not contended that the superintend-
ent has authority forcibly to make, or cause to be made, a
physical examination of a member of the police department.
If a policeman does not choose to submit to the examination
and to abide by the rules and regulations of the department,
he merely commits the offense of disobeying the superin-
tendent and subjects himself to a charge of that kind be-
fore the civil service commission. No distinction is made,
under the constitutional provision, between unreasonable
searches of the person and other searches which are unrea-
sonable, but the searches referred to have always been un-
derstood as those which are made for the purpose of finding
and seizing private papers or articles of personal property or

securing evidence of violations of the law. Even searches of that kind are not necessarily unreasonable, and one who is in legal custody may have his person searched by officers of the law without violating the provision of the constitution.

An argument is drawn from the rule of this court that in a civil suit the court has no power to compel a physical examination of a party to the suit. There is no similarity between the two cases, nor is there any claim that the superintendent may compel the examination of a policeman. But the rule that the court cannot compel an examination of a party does not rest upon immunity, under the constitution, from an unreasonable search. There is no doubt that a statute might be enacted requiring a party to submit to an examination as a condition of maintaining the suit, and many courts have held that such an examination either rests in the discretion of the court or may be demanded by the opposite party as a matter of right. In any view of the case we cannot see how it can be said that the superintendent of police is compelled by the constitution to remain in ignorance of the physical capacity of policemen to perform the duties required of them, with the necessary consequence that the policemen may retain positions which they are incapacitated to fill and draw salaries for services they are unable to perform. Even if the examinations conducted for the purpose of ascertaining the facts should be characterized as searches of the person, they cannot be considered unreasonable.

The court did not err in overruling the demurrer, and the judgment is affirmed.          *Judgment affirmed.*