DIXIE GREYHOUND LINES, INC., *v.* MATTHEWS.

(In Banc. Nov. 23, 1936.)

[170 So. 686. No. 32273.]

104

**Chandler, Shepherd, Owen & Heiskell,** of Memphis, Tenn., and **J. G. Holmes,** of Yazoo City, for appellant.

R. T. Hilton and Charles S. Cox, both of Jackson, and Barbour & Henry, of Yazoo City, for appellee.

108

Argued orally by **A. L. Heiskell,** for appellant, and by **J. F. Barbour,** for appellee.

**Cook, J.,** delivered the opinion of the court.

This is a suit, by next friend, on behalf of the appellee, Marjorie Merle Matthews, a minor, who was seven years of age at the time of the accident, against the Dixie Greyhound Lines, Inc., appellant, to recover damages for alleged personal injuries sustained in a collision between an automobile in which she was riding and a bus owned and operated by the appellant. There was a jury verdict for three thousand dollars, the full amount sued for, and after a motion for a new trial was overruled, this appeal was perfected.

The collision in question occurred just south of the intersection of Bailey avenue and Fortification street in the city of Jackson, Miss. The appellant's bus was proceeding southwardly on Bailey avenue when the automobile in which the child was riding was driven from a private parking space on the west side thereof. The automobile was proceeding diagonally across the avenue in a northeasterly direction for the purpose of proceeding northward on the east side of the avenue. As the collision became imminent, the bus swerved to the left, and the driver of the car cut to his right in an effort to avoid a collision, but the two vehicles collided, the bus striking the front end of the automobile and changing its direction from northeast to slightly southeast. The automobile was a coupe with a rumble seat, and four adults were riding in the front seat, while the appellee was riding in the rumble seat. Two of the passengers on the front seat of the automobile were injured, but the testimony as to whether or not there was apparent evidence of injury to the appellee is conflicting.

It will be unnecessary to set out the substance of the lengthy evidence bearing upon the question of liability, as it is conceded that upon this point the evidence was conflicting, and that there was evidence of negligence on the part of the appellant in the operation of its bus which required the submission of the question of liability to the jury. The assignments of error are all directed at the excessiveness of the verdict, it being contended: (1) That the award of damages is against the overwhelming weight of the evidence; (2) that it is so excessive as to evince passion, prejudice, or caprice on the part of the jury; and (3) that the court committed prejudicial error in refusing appellant the right to produce material evidence bearing upon the nature and extent of the appellee's injury, if any, and the amount of damages to be recovered.

The collision occurred on June 6, 1934, and this suit was not filed for more than a year thereafter, or on July 4, 1935. The testimony of numerous witnesses who were at the scene of the accident immediately or shortly thereafter is slightly conflicting as to whether or not there was then any manifest evidence of injury or shock to the child, the weight of the evidence being to the effect that she did not appear to have been injured. The appellee's mother testified, however, that on the following day she discovered bruises on the appellee's hip and stomach, and bleeding from the vagina which continued for several weeks, and that during a part of this time the child was confined to her bed with high fever. As to these facts she was partially corroborated by the child's grandmother and another person who visited in the home. No physician was called to examine the appellee until September following the accident in June. Dr. E. A. Copeland testified that he made an examination of her about September 1st after the accident in June, and that she then had soreness in both hips and her back, a sore and slightly swollen place in her left groin, and

that she was in a highly nervous and anemic condition. He also testified that there was an enlargement of and some discoloration over the pubic bone and some swelling and that he saw her several times thereafter and prescribed a tonic and treatment for her nervous condition.

Dr. Copeland further testified that on the twenty-first of August, 1935, after the suit was filed in June, and again on September 15, 1935, in conjunction with Dr. Willis Walley, he took X-ray pictures of appellee's injured hip. These X-ray pictures were exhibited to the jury, and from his readings thereof Dr. Copeland testified that appellee was suffering from green stick fractures of the left pubic bone and through the ilium leading down into the left hip joint; that there was a crushed left hip joint to the extent that it was out of alignment one quarter of an inch; that the coccyx bone was fractured and pushed to one side; and that "when she grows up with this hip mashed in there, she is not going to be able to ever become a mother, if this bone doesn't grow." He further testified that, while a child in the condition described by him would be able to walk and play with other children, such injuries would limit the normal activities of the child and would cause some pain. Dr. Walley who assisted in taking these X-ray pictures was not offered as a witness.

Appellant introduced many witnesses to trace the movements and activities of the appellee for the period of about one year following the collision, which included the full scholastic year beginning in September and ending about the first of the following June. These witnesses included playmates, neighbors, police officers, and her teacher in the public school. The testimony of these witnesses was to the effect that the appellee engaged in all the normal play and activities of a healthy normal child; that she entered school in September and maintained an average attendance record, and engaged actively in the regular free play of the children, and in the

supervised physical culture and supervised games and recreation, without complaint and without giving any evidence of pain, injury, or disability of any sort.

Appellant also offered as witnesses three physicians who were experts in reading or interpreting X-ray pictures, one of whom was an expert radiologist. Each of these physicians testified that the X-ray pictures which were exhibited before the jury were so defective as to be of little value; that they showed no evidence of an injury of any kind; that the fact that one hip was higher than the other on the film was not caused by a deformity, but was the result of having the patient improperly placed over the film; that the pictures definitely showed that the patient was not properly "centered;" and that the pictures were taken at an angle which would cause a distortion or irregularity therein.

Appellee did not take the stand as a witness, but her mother, as next friend herein, was asked by her counsel whether she was willing for the appellee's hip to be exhibited to the jury, and she consented thereto; whereupon the court, jury, and counsel retired to the jury room where profert was made of appellee's hip and abdomen, and appellee's mother there pointed out to the jury a scar on her hip, and testified that there were bruises on "her little stomach here," and that the scar was not on her hip before she got the injury sued for.

Upon returning to the courtroom, appellant moved the court to permit a physical and X-ray examination of the plaintiff by wholly disinterested physicians, and upon this motion being overruled it renewed the motion to the extent of requesting permission to subject the appellee to a physical examination by wholly disinterested physicians. Upon the assumption that the appellee had no' consented to such an examination, the court overruled both motions, and its action in so doing is assigned a ; error.

In view of the fact that we have reached the conclusion that this cause must be reversed on another point, for the assessment of damages, it will be unnecessary to consider the assignments of error based upon the ground that the award of damages is against the overwhelming weight of the evidence, and is so excessive as to evince passion and prejudice on the part of the jury. We will, therefore, pass to the consideration of the assignments of error based upon the action of the court in refusing to permit a physical and X-ray examination of the parts of appellee's body which were alleged to have been injured and which were voluntarily exhibited to the jury for inspection and examination.

In the consideration of the question presented by these assignments, the privileged communications statute, section 1536, Code of 1930, is in no way involved, as under that statute it is only "communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice" that are declared to be privileged. An examination by wholly disinterested physicians could not involve communications between physician and his patient or one seeking professional advice from such physicians, and if the action of the court in refusing permission for an examination of the parts of appellee's body alleged to have been injured is to be upheld, the basis of the right so to do must be found in the doctrine of the inviolability of the person. This doctrine is thoroughly established in this state and will prohibit any examination of the person unless such inviolability is waived. In the case of Yazoo & M. V. R. R. Co. v. Robinson, 107 Miss. 192, 65 So. 241, the right of every individual to the possession and control of his own person, free from all restraint or interference of others, was especially recognized; the opinion in that case being based upon the opinion of the Supreme Court of the United States in Union Pacific Ry. Co. v. Botsford, 141 U. S. 250, 11 S. Ct. 1000, 35 L. Ed. 734. But in the

present case we are not dealing with an application for surgical examination in advance of the trial, or before the parts of appellee's body which were claimed to have been injured were voluntarily exhibited to the jury. The question here is whether or not the appellee's personal privilege of inviolability of her person was waived when her body was made an exhibit before the jury. Bearing upon this question there are numerous decisions of state courts, and also numerous federal decisions, which recognize the binding force of the Botsford case, supra, in reference to the inviolability of the person before a waiver of the right.

In the case of Chicago & N. W. Ry. Co. v. Kendall, 167 F. 62, 71, 93 C. C. A. 422, 16 Ann. Cas. 560, the Circuit Court of Appeals, Eighth Circuit, while recognizing the binding force of the Botsford case as to applications for physical examinations in advance of the trial, said: "In the present case we are not dealing with an application for a surgical examination in advance of the trial. Here the plaintiff at the trial voluntarily exhibited his knee in open court for inspection. Having done this, it was beyond his power to arrest the investigation. The defendant and the court were entitled to employ any agency in its examination which would aid in the determination of the issue on trial. . . . Whether there were hidden ailments could only be discerned by the skill of a surgeon, and the defendant and the court were as much entitled to turn the eye of a surgeon upon the plaintiff's knee as they would have been to look at a blood stain through a glass. Having exhibited his knee to the jury, it became a part of the evidence in the case, and the mere accident that the thing exhibited was part of a human body could only qualify, and not defeat, the right of complete investigation."

In Rison v. Postal Telegraph-Cable Co. (D. C.), 28 F. (2d) 788, 789, the court used the following language: "As far as examination of a party prior to trial is con-

cerned, I must hold that a defendant is not entitled to an order for the physical examination of the plaintiff. Such examination cannot, under the rule of the Botsford case, be ordered before the trial, nor at the trial, unless plaintiff, by exhibiting injuries to the jury, himself waives his personal immunity, and must thereafter subject himself to further examination of the injuries so exhibited.''

In the case of Holton v. Janes, 25 N. Mex. 374, 183 P. 395, 396, the court said: ''An examination of the cases will show that the courts have uniformly held that, where a plaintiff in a personal injury suit voluntarily exhibits the injured part of his body to the jury for inspection, the portion of his body so exhibited becomes an exhibit in the case, like any other object or thing introduced in evidence, and the opposite party has the right to make such inspection of it as will enable him to explain, criticize, or impeach its value as evidence, and to that end have it examined by experts.''

In Chicago, etc., Ry. Co. v. Langston, 19 Tex. Civ. App. 568, 47 S. W. 1027, 1029, 48 S. W. 610, where the plaintiff exhibited her injured limbs to the jury, the court announced the following rule:

''This court, and presumptively our Supreme Court, stands committed to the views expressed by the majority of the court in the Botsford case. Gulf, C. & S. F. Railway Co. v. Pendery, 14 Tex. Civ. App. 60, 36 S. W. 793, in which writ of error was refused.

''But, inasmuch as appellee invited an inspection and examination of her wounded limbs by making profert of them on the trial, we have finally concluded that the case presents a different question from that so often considered, and that its solution should not be influenced by our cherished Anglo-Saxon principle of personal security. In our opinion, it would be a perversion of that principle to apply it in a case like this, where the plaintiff, unfortunate and pitiable though she be, voluntarily

lays bare before the court and jury her afflicted members for the inspection and examination of the judge, jury, and advocate. For all the purposes of the trial, she thus waived her right to object, upon the ground of an invasion of her right of personal security, to a reasonable and proper examination, under the direction of the court, of the wounded parts. She thus, by her own voluntary act, conferred upon the court jurisdiction to compel what otherwise she might have refused to submit to. Having conferred the jurisdiction, she could not take it away at pleasure, without trifling with the court. It lasted as long as the trial lasted.''

In Kenney v. LaGrone (Tex. Civ. App.), 62 S. W. (2d) 600, 601, the court used the following language:

''The settled general rule in this state is that a person suing for damages for personal injuries cannot be compelled to submit to a physical examination by physicians of either the defendant's or the court's selection.

''But this rule is subject to this exception, that when such person voluntarily exhibits the injured part of his body to a jury during the trial of his case, he thereby waives the inherent inviolability of his person and immunity from examination by experts. In such case, speaking generally, the defendant may properly demand that the plaintiff submit to reasonable examination by reputable physicians of defendant's selection, and the trial court's refusal of the defendant's motion therefor constitutes error.''

In support of this view the court cited many cases from the Texas Supreme Court and the Court of Civil Appeals, including the case of Panhandle & S. F. Ry. Co. v. Sedberry (Tex. Civ. App.), 46 S. W. (2d) 719, 720, wherein it was said that: ''An actual and voluntary exposure of the alleged injured part of the limb was made first by the plaintiff, who thus waived the inviolability of his person. Such step having been taken by him, the court erred in overruling the defendant's motion, but should

have granted the defendant the right to have the injured member examined under proper circumstances by physicians of the defendant's selection.''

To the same effect are the cases of Haynes v. Town of Trenton, 123 Mo. 326, 27 S. W. 622; Brown v. Chicago, etc., Ry. Co., 12 N. D. 61, 95 N. W. 153, 102 Am. St. Rep. 564; Swenson v. Aurora, 196 Ill. App. 83; and Pronskevitch v. Chicago & A. Ry. Co., 232 Ill. 136, 83 N. E. 545, 547, wherein the Supreme Court of Illinois said: ''We have held that the court has no power to compel the plaintiff in a personal injury case to submit to a physical examination. Peoria, Decatur & Evansville Railway Co. v. Rice, 144 Ill. 227, 33 N. E. 951. Appellee having offered his body voluntarily to the inspection of the jury, it then became a subject of examination under such reasonable restrictions as the court might see fit to require.''

In Gimenez v. Great Atlantic & Pacific Tea Co., 236 App. Div. 804, 259 N. Y. S. 597, the appellate division of the Supreme Court held that examinations by the use of X-ray photography were authorized in view of the fact that ''the art has developed to such an extent that the use of X-ray photography has become a common and generally accepted procedure in medical and surgical diagnosis.''

X-ray pictures of the parts of appellee's body which were claimed to have been injured in the accident were produced before the jury, and the correctness, accuracy, and sufficiency of these pictures was sharply controverted, and the alleged injured parts of her body were voluntarily exhibited to the jury. This being true, upon authority and what we consider the better reasoning, we have reached the conclusion that thereby appellee's personal immunity from examination by experts was waived, and that under these circumstances the supposed injured parts which were exhibited to the jury thereby became subject to a reasonable and proper X-ray and physical examination by experts of the defendant's selection, un-

der such reasonable restrictions as the court might require. The court would not be required to, and should not, grant the right to an examination that would involve unreasonable delay of the trial, and in granting the right to such an examination it should preserve the injured party's right to have his own medical and legal representatives present at such examination. We think, therefore, that the court erred in overruling appellant's motions to permit the physical and X-ray examination of the parts of appellee's body which were exhibited to the jury; and consequently the judgment of the court below will be affirmed as to liability, but will be reversed as to the amount of damages allowed, and remanded for the assessment of damages only.

Affirmed in part; reversed in part, and remanded.

**Smith, C. J.,** delivered an opinion.

When the plaintiff exhibited her body to the jury, the appellee became thereby entitled to an examination of it by a physician (which examination would most probably have disclosed nothing that the jurors did not see); but I seriously doubt whether it also became thereby entitled to have an X-ray photograph of the appellee's body made, although the trial might not thereby have been unduly delayed.

**Ethridge, J.,** delivered a dissenting opinion.

I am compelled to dissent from the holding of the majority opinion in this case, because no person can lawfully be compelled to submit to a physical examination any further than such person desires to go.

It is well settled in this state that the courts have no power, either conferred by statute, or at the common law, to require a plaintiff, in an action for injuries, to submit to a physical examination by physicians appoint-

ed by the court. Yazoo & M. V. R. R. Co. v. Robinson, 107 Miss. 192, 65 So. 241. In this case the court cited and followed the United States Supreme Court in the case of Union Pac. Ry. Co. v. Botsford, 141 U. S. 250, 11 S. Ct. 1000, 1001, 35 L. Ed. 734, in which it was held that: ''No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge COOLEY: 'The right to one's person may be said to be a right of complete immunity: to be let alone.' Cooley, Torts, 29. For instance, not only wearing apparel, but a watch or a jewel, worn on the person, is, for the time being, privileged from being taken under distress for rent, or attachment on mesne process or execution for debt, or writ of replevin. 3 Bl. Comm. 8; Sunbolf v. Alford, 3 Mees. & W. 248, 253, 254; Mack v. Parks, 8 Gray [Mass.] 517 [69 Am. Dec. 267]; Maxham v. Day, 16 Gray [Mass.] 213 [77 Am. Dec. 409]. The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault, and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country.''

The question as to whether a plaintiff, who exhibits a portion of his body to the jury, waives his right as to the inviolability of his person, has not been decided in this state, although there have been many suits where no

attempt was made to force a plaintiff, who had made an exhibit of his body, to submit to an examination by physicians or X-ray operators. Such is highly persuasive that the right was clearly recognized not to exist.

In the majority opinion it is said that the privileged communication statute, section 1536, Code 1930, is in no way involved. But, while this statute is not literally involved, the principles announced thereunder are violated by the majority opinion in this case. In order that government by law, and not by the caprice of men, may be maintained, it is necessary that the principles of decisions be recognized and adhered to, and shadowy and fanciful distinctions should not be indulged in by the courts in the administration of justice.

The inviolability of the person principle, and the privileged communication statute, both may be waived, and if a waiver is not applicable in one case, it should not be applicable in another. It was held by this court, in construing the privileged communication statute, that it could be waived by contract signed in advance of the treatment by the physician. Sovereign Camp, W. O. W., v. Farmer, 116 Miss. 626, 77 So. 655. In the case of Newton Oil Co. v. Spencer, 116 Miss. 568, 77 So. 605 (which decision appears in the same volume as Sovereign Camp, W. O. W., v. Farmer, supra), it was held that a physician who treated an injured person was incompetent to testify, although the person introduced another physician who testified to the nature and extent of the injuries, and it was there contended that it was error to exclude the testimony of the physician who first attended the injured person, because he had waived the privilege afforded him by the statute when he placed his injuries in evidence, but the court rejected that contention, holding that was no waiver. In the subsequent case of U. S. F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A. L. R. 605, it was vigorously contended by counsel that by the introduction of one physician employed by the plain-

tiff, who testified to the nature and extent of the injuries, he thereby waived the immunity of the privilege afforded him by the privileged communication statute, section 1536, Code 1930, but the court again held that the introducing of one physician did not waive the right to object to another physician testifying. And, in a number of cases coming to this court, it was urged that the privilege was waived whenever an injured person offered one physician to testify to the nature and character of his injuries; that by doing so he raised an issue; and that all physicians having knowledge of the nature and character of the injuries should be permitted to testify. Davis v. Elzey, 126 Miss. 789, 88 So. 630, 89 So. 666; Hunter v. Hunter, 127 Miss. 683, 90 So. 440; Watkins v. Watkins, 142 Miss. 210, 106 So. 753; Metropolitan Life Ins. Co. v. McSwain, 149 Miss. 455, 115 So. 555; Dabbs v. Richardson, 137 Miss. 789, 102 So. 769; Yazoo & M. V. R. R. Co. v. Decker, 150 Miss. 621, 116 So. 287; Miss. Power & Light Co. v. Jordan, 164 Miss. 174, 143 So. 483; and Illinois C. R. R. Co. v. Humphries, 170 Miss. 840, 155 So. 421.

In all of these cases, and others not cited, this court has continued to hold that although the benefit of the privileged communication statute may be waived, it is not waived by introducing the nature and character of the injuries and one or more physicians to testify thereto.

The majority opinion cites a number of cases from other jurisdicitions to sustain the contention that the plaintiff in the case at bar waived her immunity by exhibiting a portion of her body, and that therefore the injured portion of her body became an exhibit in the case, which may be dealt with as other exhibits. The principal case relied upon therein is Chicago & N. W. Ry. Co. v. Kendall (C. C. A.), 167 F. 62, 16 Ann. Cas. 560. In that case, while the court did not base its holding upon the ground that the plaintiff could be compelled

to submit to a physical examination under the laws of Iowa, where the injury occurred and the cause of action arose, it is manifest that the statute had important influence in its decision, and it seems to have been controlling in the opinion of Judge SANBORN of the Circuit Court of Appeals. It seems to be a principle with the federal court that the rules of evidence in a state court are generally controlling on it. In a case note to the Kendall case, 16 Ann. Cas. 563, it was held by the United State Supreme Court (Nashua Sav. Bank v. Anglo American Land, etc., Co., 189 U. S. 221, 23 S. Ct. 517, 518, 47 L. Ed. 782) that, " 'The laws of the several States,' with certain exceptions, 'shall be regarded as rules of decision in trials at common law in the courts of the United States,' " and, "The 'laws of the several states' with respect to evidence within the meaning of this section (Sec. 721, Rev. Stat. U. S. [28 U. S. C. A., sec. 725]) apply, not only to the statutes, but to the decisions of their highest courts."

Other authorities cited in the majority opinion appear to be from states recognizing the rule that when a party opens up a controversy by introducing a physician, or other witness, he thereby consents that all other like witnesses having knowledge of the matter may be introduced.

Whatever may be said in favor of one rule, or the other, this court has clearly adopted the principle, in privileged communication cases, that the introducing of some physicians does not subject the party offering same to the hostile evidence of other physicians having like information. The construction now placed upon a waiver of the benefit cannot be sustained on the theory that the privileged communication statute forbids the introduction of physicians against the objection of the plaintiff because the privilege may be waived.

I cannot see any difference between the principle of the waiver in one case and in the other. The majority

opinion tends merely to create confusion upon the subject of waiver.

Furthermore, in the case at bar, the plaintiff, in exhibiting the injured portion of her body, did not submit anything but a view of the surface of the portion of her body alleged to be injured, and it certainly could not be justly contended that this offer to view only the surface meant an offer to submit to an examination by a surgical operation, or X-ray pictures, or whatever experiment that would show, or tend to show, internal injuries. All that the jury could secure from such an examination was the vision of the exterior of her body. The jury could not see beneath the skin, and certainly the plaintiff's waiver should not be extended beyond the purposes for which the exhibition was made.

I cannot conceive how part of a human being exhibited in a case can be made an exhibit in a case on the same basis as a picture, or wood or iron, etc., since it cannot be taken and kept in the custody of the law as can inanimate things.

It seems to me that the majority opinion ignores the principle, although not the letter, of the decisions under the privileged communication statute.

I think, therefore, that the court below did not err in refusing to permit medical and X-ray examination of the child.