**TRANSPORT INSURANCE COMPANY, a corporation, Oklahoma Transportation Company, a corporation, and Curtis Heirston, an individual, Plaintiffs in Error,**

**v.**

**Max McALISTER, a minor suing by and through his mother and next friend, Betty Jane McAlister, Defendant in Error.**

No. 38419.

Supreme Court of Oklahoma.

May 24, 1960.

Rehearing Denied Sept. 13, 1960.

Second Petition for Rehearing Denied Oct. 4, 1960.

Robert J. Bell, Charles B. Tucker, McAlester, and Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiffs in error.

Stipe, Gossett & Stipe, McAlester, and Cheek, Cheek & Cheek, Oklahoma City, for defendant in error.

BERRY, Justice.

The parties will either·be referred to herein as they appeared in the trial court which is in reverse order to their appearance here, or by name.

In his petition filed herein, plaintiff alleged in substance that he was 3 years old; that the action was brought in his behalf by his mother and next friend, Betty Jane McAlister; that defendant, Transport Insurance Company, issued to defendant, Oklahoma Transport Co., hereafter referred to as "Bus Co.," a liability insurance contract under which it obligated itself to compensate persons injured through Bus Co.'s negligent operation of its busses; that Bus. Co. was a common carrier of passengers for hire; that defendant, Curtis Heirston, was operating the bus in which plaintiff and his mother were riding at the time he was injured; that on December 2, 1956, plaintiff was traveling as a fare-paying passenger on one of Bus Co.'s busses; that at a point near Hartshorne, Oklahoma, "The driver Heirston turned the vehicle sharply and threw on the brakes causing an extraordinary, violent, unusual, sudden jerk of the seat which plaintiff occupied with such force that he was thrown across the aisle so that his head and face were struck against a part of the bus cutting his face and the blow upon his head resulted in a concussion and other injury to the Ocular nerve"; that the accident resulted from the bus being driven "at an improper speed in regard to the curvature and traffic of the highway at the time of accident" and in "not having the bus under reasonable control and in turning the vehicle abruptly and in such a manner as to throw the plaintiff from his seat"; that the bus was equipped with "irregular, defective and inadequate brakes"; that as a result of the accident,

plaintiff sustained severe and permanent injuries to "his head, neck, spinal column, ocular nerve, muscles and tissues"; that "his eyes have not properly functioned but have been crossed due to injury of the nerves controlling the eyes"; that his "injuries have caused severe and painful muscular and neurological disturbances; his appearance has been changed and altered by the cuts on his face and the crossing of his eyes all of which is and will be humiliating and embarrassing"; that because of the accident and resulting injuries, plaintiff was damaged in the amount of $100,000.

The defendants filed a joint answer in which they denied the allegations of plaintiff's petition and specifically denied "knowledge of the occurrence of an accident as alleged in plaintiff's petition but state that if the accident did occur, it was an unavoidable casualty."

The jury to which the case was tried returned a $25,000 verdict in favor of plaintiff as to each defendant. From order denying the motion of defendants for a new trial which was directed to the judgment on the verdict, defendants perfected this appeal.

The plaintiff's mother testified that on the date of the accident she and plaintiff planned to visit her sister in Denison, Texas; that her husband drove them from their home in Van Buren, Arkansas to Ft. Smith, Arkansas, where a bus ticket was purchased; that she and plaintiff boarded one of Bus Co.'s busses at Ft. Smith; that upon boarding the bus she and plaintiff sat in the front portion of the bus; that at one time she noticed the speedometer and that it was registering 75 miles per hour; that before reaching McAlester, Oklahoma, she and plaintiff took the third right-hand seat from the rear of the bus; that she sat next to the bus window and plaintiff sat next to the aisle of the bus; that "as we approached Hartshorne we came upon this curve and the bus driver applied his brakes and there was a sudden jerk, and I put my hand up to catch myself and I put my hand out to catch my son to keep him from falling";

that the bus didn't stop but continued on; that the bus was traveling between 65 and 75 miles when the brakes were applied; that the sudden jerk threw plaintiff from his seat and into the aisle; that a passenger picked plaintiff up and placed him in his mother's arms; that plaintiff screamed and whimpered for a short time but then became silent and limp; that as a result of the fall plaintiff's head was cut and bruised; that she was unable to wash the blood from plaintiff's face before reaching McAlester where she, with the ticket agent's assistance, washed the blood from plaintiff's face; that upon reaching Denison, Texas, plaintiff was immediately taken to a hospital where his head was treated and three stitches were taken in his lip; that prior to the accident plaintiff was normal in appearance and behavior; that the morning following the accident plaintiff's "eye was black—black underneath his eye, and his eye was crossed and his jaw was all swollen and black"; that following the accident, plaintiff complained of headaches; that he dragged his right foot; that the right side of his face did not appear normal; that he had an impediment in his speech. The sister (plaintiff's aunt) testified. Her testimony corroborated that of plaintiff relative to the plaintiff being normal in appearance and behavior before the accident and that following the accident his condition was as described by plaintiff's mother. This witness also testified relative to plaintiff's appearance upon reaching Denison and the fact that he was treated at a hospital where stitches were taken in his lip. The nature and extent of plaintiff's injuries were proved by medical testimony, which testimony also tended to establish that plaintiff's present physical condition was attributable to the injuries that plaintiff is alleged to have sustained while a passenger on Bus Co.'s bus.

The defendants' defense followed the allegations of its answer. The bus driver (Heirston) testified that he did not recall ever having seen plaintiff or his mother; that he didn't hear a child scream or cry on the trip from Ft. Smith to McAlester on

·date of accident; that his first knowledge of alleged accident was when Bus Co. made inquiry of him concerning same some 6 months following alleged accident; that nothing unusual occurred on the trip from Ft. Smith to McAlester; that he didn't and had no occasion to suddenly apply the brakes to the bus or jerk same; that a bus should not be driven in excess of 30 miles an hour in negotiating the curve where the accident is alleged to have occurred. The bus agent at McAlester testified that he did not assist plaintiff's mother in washing blood from plaintiff's face. The bus driver identified a bus ticket stub.in the possession ·of plaintiff's mother as part of a ticket that he collected on the bus on the date of the alleged accident.

The defendants base their contention of error on the trial court's part on three propositions. First, in denying defendant's application for orders directing plaintiff to submit to a medical examination. Second, in giving certain instructions to the jury. Third, in denying defendant's motion for a new trial based upon newly-discovered evidence. We will discuss these propositions in the order mentioned.

Prior to trial, defendants filed an application seeking an order of the court directing plaintiff to submit to a physical examination by a physician selected by defendants or the court. This application was denied. At the trial the application was renewed and again denied.

The plaintiff did not take the witness stand but for a portion of the trial was present in the court room. The parties appear to agree that the jurors probably observed that plaintiff's right eye did not focus properly; that he dragged his right foot, and possibly observed other physical disabilities or disfigurement that plaintiff attributes to the accident in controversy.

The defendants freely and frankly admit that it has long been settled law in this jurisdiction that where a plaintiff has not taken the witness stand and in effect placed his injuries in evidence, the court is powerless to compel him to submit to a medical examination. See City of Kingfisher v. Altizer, 13 Okl. 121, 74 P. 107; Atchison, T. & S. F. Ry. Co. v. Melson, 40 Okl. 1, 134 P. 388; Law v. Corsin et al., 206 Okl. 462, 244 P.2d 831; Oklahoma Transportation Co. et al. v. Stine, Okl., 280 P.2d 1020 and cited cases.

Defendants ·urge that the facts of this case clearly show the necessity of departing from the rule heretofore .followed and an adoption of the majority rule to the general effect that in proper cases a court has inherent power to order a plaintiff who has not taken the witness stand to submit to a physical · examination. · See 17 Am.Jur. "Discovery and Inspection" Secs. 47 and 48, pp. 52 et seq., where last above referred-to rule and rule followed by this Court are discussed.

In countering defendants' argument, plaintiff points to the fact that (1) plaintiff had been examined by several different doctors prior to the trial and that the jury had the benefit of the testimony of six doctors; that (2) defendants' principal defense was that an accident had not in fact occurred; that (3) the mother's refusal to make plaintiff available for a physical examination was based on advice of counsel, which advice was based on the facts and cases heretofore cited.

We are of the opinion that it is here unnecessary to decide whether the facts of this case show or fail to show reason· for departing from our decisions announcing a rule contrary to that contended for by plaintiff. In considering this issue, we are persuaded by the fact that this Court has, since 1903, consistently adhered to the rule that defendants attack; that the rule is based upon the common law and is therefore sustained by precedent; that the rule is subject to change by the Legislature; that the Legislature, by failing to change the rule, has in effect acquiesced in same. This is said in 17 Am.Jur., Sec. 48, p. 55:

> "The courts adopting this view that the trial court has no inherent power to order physical examination of the plaintiff in a personal injury action re-

gard the matter as one more appropriate for consideration by legislatures than by courts. * * *"

We are inclined to the opinion that the matter of whether the rule under consideration should be changed at this late date presents a legislative and not a judicial question.

■ We next consider defendants' contentions which are based upon alleged error on the trial court's part in giving erroneous instructions.

The first instruction constituted a restatement of the petition and answer. Defendants excepted to this instruction. Following the restatement, this appears: "These form the issues which this jury is now empanelled and sworn to try." There follows a paragraph advising the jury that plaintiff had introduced no evidence relative to the bus being operated with defective or inadequate brakes and for said reason the jury should give no consideration to the allegation of the petition relative to defective brakes.

Defendants contend that in using the last above quoted language the court suggested to the jury that all of the matter stated in the court's summary of the petition was in fact in evidence. We are unable to agree. In the instruction which immediately follows the complained-of instruction, the court states that "This statement of the pleadings simply defines the issues to be tried and the allegations therein made do not constitute any part of the proof of the facts alleged, except where a fact is specifically admitted by the other party."

■ Defendants next complaint of Instruction No. 6 to the effect that if the jury found "and believes from a preponderance of the evidence that the defendant Heirston did apply the brakes suddenly without necessity therefor, and thereby causing the accident of which plaintiff complains, your verdict should be for the plaintiff." Defendants contend that the phrase "without necessity" wasn't defined and that this renders the instruction bad. In view of the fact that the members of the jury were no doubt familiar with motor vehicles and mo-

tor vehicular travel, we are confident that they understood the quoted phrase. Moreover, the bus driver testified that no occasion arose that required abrupt application of the brakes to the bus, but nevertheless, according to plaintiff's mother, the brakes were abruptly applied. Defendants suggest that by said instruction the court advised the jury that the matter of suddenly braking the bus without necessity, irrespective of the speed thereof, warranted a verdict in plaintiff's favor. The speed of the bus on the curve was placed at from approximately 30 miles per hour to in excess of 65 miles per hour. Assuming the bus was traveling at approximately 30 miles per hour and that the brakes were suddenly applied without necessity and that this caused the bus to be jerked to the extent that plaintiff was thrown from his seat to the floor of the bus, under the facts of this case an instruction to the effect of No. 6 would be in order. We are, therefore, unable to see wherein the court erred in giving Instruction No. 6.

We are of the opinion that when the instructions are considered as a whole, same fairly and correctly present the law applicable to the issues raised by the pleadings and presented by the evidence.

■ We turn to defendants' third and last contention. The defendants assert that subsequent to the trial they learned of a witness who would testify that she had observed that plaintiff's eyes were crossed or converged prior to the accident; that this was material testimony that could affect the result of a trial of this case; that upon learning of said witness' testimony they filed a supplemental and amended motion for new trial wherein the facts that witness would testify to were set forth, which motion was verified. This testimony would tend to impeach the testimony of Mrs. McAlister and her sister. The defendants urge that in denying this motion the trial court erred.

The parties are in agreement on the proposition that the granting of a new trial on the grounds of newly-discovered evidence

rests in the sound discretion of the court. The issue posed is therefore whether the trial court abused its discretion in denying the referred-to motion.

One seeking a new trial on the grounds of newly-discovered evidence, must show that failure to produce such evidence at the trial was not due to lack of due diligence on his part. In Parrish et al. v. Nichols, 175 Okl. 251, 52 P.2d 54, this was said in the syllabus:

> "Before a new trial should be granted for newly discovered evidence, due diligence at the time of trial in respect to such evidence must be shown; the failure to make inquiry of persons likely to know the facts shows a lack of diligence."

See also Odeneal et al. v. Halley, 207 Okl. 642, 251 P.2d 1048.

The instant action was filed July 5, 1957, and was tried March 3, 1958. It was alleged in the petition that the accident caused "the crossing of his (plaintiff's) eyes." The defendants therefore knew long before the trial that plaintiff claimed that the accident caused his eyes to converge which is the condition that plaintiff sought to prove at the trial. The referred-to condition is a disorder that the average layman can detect. Therefore, if defendants wished to ascertain whether plaintiff was physically disfigured by cross eyes or an impediment in his speech or a dragging of his right foot prior to the accident, it would have been a simple matter to have contacted laymen or others who were acquainted with plaintiff prior to the accident and present their testimony at the trial. This, the defendants failed to do. Instead, as was their privilege, they defended primarily on the grounds that there was in fact no accident. If the jury had so decided, plaintiff's physical condition at any given time would be without significance. While said condition became significant upon the jury finding that an accident occurred, this did not excuse the defendants from in fact meeting the evidence that they had reason to believe plaintiff would offer at the trial.

We are of the opinion that in denying the motion for new trial based on newly-discovered evidence, the trial court did not abuse its discretion.

Affirmed.

WELCH, BLACKBIRD, JACKSON and IRWIN, JJ., concur.

DAVISON, C. J., concurs in result.

WILLIAMS, V. C. J., and HALLEY and JOHNSON, JJ., dissent.

JACKSON, Justice (concurring specially).

In this case, and long before the commencement of the trial, the defendants made application to the trial court for an order directing that plaintiff be examined by a physician to be selected by the defendants, or by the trial court. The trial court, relying upon former decisions of this court, found and held that it was without authority of law to direct an examination by physicians selected by the court, or by physicians selected by the defendants. I agree that the trial court should be affirmed in so holding. A reversal of the case based upon that ground would result in an entrapment of the plaintiff which could hardly be justified in view of the long line of decisions from this court which were relied upon by the plaintiff. However, I do not believe we should perpetuate that rule, believing as I do that it is more unjust to require a defending party to go blindly into court than it is to require the party seeking damages for personal injuries to submit to a physical examination.

The minority rule, which has been followed by this court, seems to be based upon strong feelings as to the inviolability of the person and lack of power. This feeling of inviolability of the person has been disappearing during the past thirty or forty years. The reason for the minority rule has almost completely disappeared.

In 17 Am.Jur., Discovery and Inspection, § 47, it is said:

"While there is some difference of opinion on the question whether the court, in a personal injury action, has inherent power to require the plaintiff to submit to a physical examination by physicians and surgeons, according to the great weight of authority in this country, and the distinct modern trend of the courts, trial courts, in actions to recover damages for personal injuries, have an inherent, discretionary power to order a reasonable physical examination of the plaintiff to be made before trial by competent physicians and surgeons whenever such examination is necessary to ascertain the nature, extent, or permanency of the alleged injuries. * * *.

"Many other forcible reasons may be advanced in support of the rule above stated. Foremost among the supporting reasons is the fact that such an examination prevents a defendant from being subjected to fraudulent claims for feigned personal injuries. Moreover, it may rightly be argued that when a person appeals to a court of justice for relief, he impliedly agrees in advance to make any disclosure which is necessary in order that justice may be done. Another reason given in support of the rule is that the production of the best evidence is a necessary means of attaining full and exact justice. Obviously, an examination of the actual physical condition of the plaintiff will reveal the true extent of the injuries caused by the defendant's wrongful act more clearly than any other evidence which could be introduced."

In 51 A.L.R. at page 183 there appears an annotation entitled "Power to require plaintiff to submit to physical examination." At page 184 therein, it is said:

"As stated in the former annotations, the rule in the majority of jurisdictions is that the trial court has the power to require the plaintiff, in an action to recover for injuries, to submit to a physical examination in order that the extent of the injuries may be ascertained."

The foregoing annotation is supplemented in 108 A.L.R. at page 142, wherein it is said:

"As shown by the earlier annotations on this subject, the prevailing rule, even in the absence of express statute on the subject, seems to be that the trial court has the power to require the plaintiff in a personal injury action to undergo a physical examination at the behest of the defendant, although the latter's right is not considered absolute, and the matter is wholly within the discretion of the trial court, so long, of course, as the exercise of such discretion is free from palpable abuse."

In People ex rel. Noren v. Dempsey, 10 Ill.2d 288, 139 N.E.2d 780, 783, it is said:

"Two possible explanations of this treatment of the problem occur to us. Strong feelings as to the 'inviolability of the person', see the majority opinion in Union Pacific Railway Co. v. Botsford, 1891, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 may have been tacitly responsible. But when one seeks to recover damages on the basis of his physical injuries he put his physical condition in issue. It becomes a fact to be proved, as much as the physical conduct that gave rise to his injury, or the documents on which a right to recover is asserted in a contract action. The basic principle that animates our law of evidence is that what is relevant is admissible. Exceptions to that principle must justify themselves. If there is to be exception here, it must be because a privilege exists. And a privilege in the law of evidence, to be soundly based, must rest on considerations that make it more desirable to risk concealment of the truth than to disrupt the values that the privilege supports. No such considerations are involved in the ordinary physical examination in a personal injury case.

"The other explanation is that the doctrine of 'lack of power' may have been a shorthand way of saying that the court felt that it was appropriate for the legislature, and not the courts, to determine that such examinations should be permitted. Cf. People ex rel. Wayman v. Steward, 249 Ill. 311, 316, 94 N.E. 511, 33 L.R.A.,N.S., 259. This view, however, ignores the common-law precedents that permitted physical examination where necessary, and it overlooks the power of our courts to regulate judicial procedure. People v. Callopy, 358 Ill. 11, 192 N.E. 634; Agran v. Checker Taxi Co., 412 Ill. 145, 105 N.E.2d 713. Moreover, it involves the dubious assumption that the legislature could today constitutionally cut off a reasonable and appropriate method of getting at the truth in a judicial controversy. Since Parker v. Enslow was decided there has been a substantial change in judicial attitude. Excessive emphasis upon the adversary aspects of our system, and hence upon the sporting chances of a trial, has yielded to universal recognition of the role of a trial as a search for truth. Limited discovery, available only in equity, has been replaced by comprehensive discovery available in all actions. In the light of the comprehensive discovery allowed today, it would be difficult to justify an exception that would single out for disparate treatment the case of the plaintiff who seeks damages because of his physical condition.

"By decision, by rule of court, and by statute, physical examination is almost everywhere permitted in appropriate cases. Wigmore, Evidence, 3d ed., sec. 2220; see cases collected, Brown v. Hutzler Bros. Co., 152 Md. 39, 136 A. 30; 51 A.L.R. 183; Dixie Greyhound Lines v. Matthews, 177 Miss. 103, 170 So. 686, 108 A.L.R. 142, 135 A.L.R. 883. That this result is supported by strong policy considerations is apparent from the fact that in workmen's compensation cases, and in many other instances, our statutes require physical or mental examinations. Ill. Rev.Stat.1955, chap. 48, pars. 138.12, 172.47; chap. 91½, pars. 4–4, 6–1; chap. 38, par. 823."

While I concur in the majority opinion affirming the trial court I am of the further opinion that we should repudiate our former decisions which follow the minority rule. It is my further view that we should apply the majority rule in all those cases tried subsequent to the publication of our opinion herein (See People v. Ryan, 152 Cal. 364, 92 P. 853, and 21 C.J.S. Courts §§ 186a and 187) where timely request has been made, and where it further appears that a physical examination would be just and appropriate.

I am authorized to state that WELCH and BLACKBIRD, JJ., concur in the views herein expressed.