LILLIAN W. PURDUM *v.* SOPHIA LILLY ET AL.

[No. 9, January Term, 1944.]

*Decided February 2, 1944.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, MELVIN, and BAILEY, JJ.

*James C. Burch,* with whom was *L. Wethered Barroll* on the brief, for the appellant.

*H. Courteney Jenifer, James D. C. Downes* and *Jenifer & Jenifer* submitted on brief for the appellees.

BAILEY, J., delivered the opinion of the Court.

On August 2, 1943, Lillian W. Purdum, next friend of Sophia Lilly, an alleged lunatic, filed a petition in the

Circuit Court for Baltimore County, in equity, naming the appellees herein as defendants and praying, as a part of the relief sought, that a writ of *de lunatico inquirendo* be issued to the sheriff of Baltimore County to inquire into the lunacy of the said Sophia Lilly.

The petition alleged "that the said Sophia Lilly is now and has been for some time past of unsound mind and *non compos mentis,* without lucid intervals; that she is now incompetent and has been incompetent for some time past to manage her property and affairs; that she is about ninety years of age; and has for a long time past been in feeble health with her faculties weak and impaired."

Further allegations of the petition were to the effect that the petitioner was the niece of Sophia Lilly; that the alleged lunatic had been for some time past a patient at the Daughters of the Eucharist, Maiden Choice Lane, Catonsville, Baltimore County, Maryland; that she was possessed of a considerable estate in Baltimore County and Baltimore City, consisting of real property, mortgages and cash in bank; that, while she was of unsound mind, without lucid intervals, she was prevailed upon to convey her home in Catonsville and to transfer a large amount of cash in bank to one of the defendants, Frank Wilson; and that, unless the court assumed jurisdiction and passed such orders as might be necessary for the protection of the estate of the alleged incompetent, the said estate would suffer irreparable loss and injury.

Upon this petition, which was sworn to by the appellant, the chancellor passed an order directing the writ of *de lunatico inquirendo* to issue to the sheriff of Baltimore County and requiring the defendants to show cause, on or before August 16, 1943, why the other relief prayed for in the petition should not be granted.

On August 16, 1943, the defendant, Frank Wilson, filed two answers to the petition, one in his individual capacity and one as next friend of Sophia Lilly, the alleged lunatic. In his answer as next friend it is alleged that Sophia Lilly is living with the said Frank Wilson, in his

home at 3 Park Drive, Catonsville; that she "is feeble and her faculties somewhat impaired by age"; that her attending physician has assured him "that the said Sophia Lilly is not of unsound mind and *non compos mentis,* but her mind is impaired by age and is known as feeble mindedness, and that at times her mental condition is alert, but at other times she is unable to make wise and discrete decisions"; that "it would probably be to the interest and advantage of the said Sophia Lilly if some one in whom she has always had confidence were appointed her trustee to manage and control her affairs for her benefit"; that her estate "will not suffer irreparable loss and injury if no one is appointed for her, because your respondent has always taken care of her and her affairs under her direction with the advice of her private counsel, and your respondent will continue to do so until this Court deems it right and proper to appoint a trustee for her"; and that he "believes it would excite, disturb and be harmful to the said Sophia Lilly if she is compelled to appear before a sheriff's jury at the time of the hearing of this cause, and he will file in this proceeding within the next five days, certificates of physicians certifying as to the mental and physical condition of the said Sophia Lilly, and further certifying that it would be harmful to require her attendance before a sheriff's jury." There were similar allegations in his individual answer, which concluded with the allegation that "there is no danger of the estate of the said Sophia Lilly suffering loss or injury because your respondent, with the guidance and advice of counsel of the said Sophia Lilly, and members of her family, has safeguared the estate of the said Sophia Lilly, and shall continue to do so until this Court determines that it be right and proper to appoint a Trustee for that purpose." Both answers are sworn to.

The physicans' certificates referred to in the first answer were filed on August 18, 1943. The certificate of Dr. George E. Urban, duly sworn to, stated that "he has examined Sophia Lilly as to her mental and physical

condition, and from his observation and examination he is of the opinion that she is not of unsound mind and a lunatic, but her mind is impaired by age (simple senile deterioration) ; and * * * that the present condition of the said Sophia Lilly is such that it would cause her annoyance, distress of mind and greatly upset and disturb her to require her to appear before a Sheriff's jury at the time her sanity is inquired into."

The certificate of Dr. J. Carroll Monmonier, also duly sworn to, stated that "he has attended Sophia Lilly for a period of over twenty years and has examined her as to her mental condition, and from his observation and examination he is of the opinion that she is not capable of taking care of her personal affairs and requires nursing care of which she has been and is now well provided; and * * * that the present condition of the said Sophia Lilly is such that it might cause serious injury to her to appear before a Sheriff's Jury at the time her sanity is inquired into."

On August 18, 1943, the appellant filed with the court a petition containing the following allegations:

"One. That the object of the petition is to secure an Order of Court directing that Dr. Ralph Truitt and one other physician to be approved by him be permitted to interview Sophia Lilly, the alleged incompetent, in order to enable such physicians to testify before the Sheriff's Jury, before whom this cause is to be tried.

"Two. That so your petitioner is advised the alleged incompetent will not appear before said jury; that petitioner is advised by Dr. Ralph Truitt (who is the Chief Physician in the clinic of Mental Hygiene of the University of Maryland Hospital) that in order for him to testify before the Jury intelligently, it is necessary for him to make personal acquaintance of the alleged incompetent; that petitioner is advised the respondent is not willing without a Court Order to permit such interview with alleged incompetent to be had.

"Three. That petitioner is advised it is proper for her to apply to this Court for an order giving the relief above set forth."

The petition then prayed that the court pass an order directing that Dr. Truitt and one other physician be permitted to interview Mrs. Lilly.

Upon this petition the chancellor passed the following order: "It is ordered by the Circuit Court for Baltimore County, in Equity, this 18th day of August, 1943, counsel for Petitioner and Respondent having been fully heard, that the relief prayed for in the aforegoing Petition be and the same is hereby denied."

It is from this order that the first appeal in this record was taken on August 18, 1943.

The original petition in this case was filed pursuant to the authority contained in Section 123, Article 16, Code of 1939, which reads as follows: "The court shall have full power and authority, in all cases, to superintend and direct the affairs of persons *non compotes mentis*, both as to the care of their persons and the management of their estates, and may appoint a committee, or a trustee or trustees for such persons, and may make such orders and decrees respecting their persons and estates as to the court may seem proper."

This section of the Code, which was originally enacted by the Act of 1875, Chap. 72, Sec. 6, confers upon courts of equity general jurisdiction with respect to persons *non compotes mentis*, but does not prescribe the method by which the incapacity shall be ascertained. It was held in *Ex parte Estate of Bristor*, 115 Md. 614, 619, 81 A. 25, that the course of procedure leading up to an adjudication of mental unsoundness remains as it existed, independently of statute, under the English practice. The history of this practice and the origin of the jurisdiction of courts of equity in such cases has been stated by Judge McSherry in *Hamilton v. Traber*, 78 Md. 26, 27 A. 229, and by Judge Thomas in *Bliss v. Bliss*, 133 Md. 61, 104 A. 467. It would serve no useful purpose to repeat them in this opinion. It is sufficient to state that the jurisdiction of equity under this section depends upon the party being *non compos mentis* and that the adjudication must be based upon the finding of a sheriff's jury under a writ

of *de lunatico inquirendo*. *Greenwade v. Greenwade,* 43 Md. 313.

However, for the court to assume control over the person and estate of one alleged to be of unsound mind, proof of the entire absence of reason, understanding or memory is not required. While the courts jealously guard against the invasion of rights of persons and property under the guise of such proceedings, they will afford protection to the person and his estate where any species of mental unsoundness is clearly shown to incapacitate him from protecting either himself or his estate against his own weakness or the artifice of others. *Johnson v. Safe Deposit & Trust Co.,* 104 Md. 460, 65 A. 333. In *Owings' Case,* 1 Bland 370, at page 385, 17 Am. Dec. 311, the chancellor said: "Under the generic legal term, *non compos mentis,* is comprehended every species of mental derangement which incapacitates a man from assenting to, or making a legal contract." And in *Greenwade v. Greenwade, supra,* 43 Md. at page 315, this court said: "The term[s] *non compos mentis* used by the Code, embraces not only lunatics and idiots, but all persons of unsound mind."

In the light of the authorities above quoted, and particularly in view of the admissions contained in the sworn answers of the defendant, Wilson, and of the facts set forth in the doctors' certificates filed by him, we feel that this record presents a case for the assumption of jurisdiction by a court of equity. But under the same authorities jurisdiction cannot be assumed until there has been an adjudication of incompetency by a sheriff's jury. This brings us to the consideration of the appellant's predicament. In this consideration we are not concerned with any rival claims between the parties for control and management of Mrs. Lilly's person and estate, but we are vitally interested in her welfare and the preservation of her estate. The sole issue to be presented to the sheriff's jury is the question of her mental capacity, and we are of the opinion that the petition filed by the appellant on August 18, 1943, was proper

and under the circumstances disclosed by this record and that the relief prayed for therein should have been granted.

This petition was filed under Discovery Rule 5 of the General Rules of Practice and Procedure, adopted by this court on January 30, 1941, pursuant to the authority contained in Chapter 719, Acts of 1939, and effective September 1, 1941. The rule reads as follows: "Whenever the mental or physical condition of a party is material to any matter involved in any proceeding, the court may, upon motion by any party and notice to all other parties, for good cause shown, order such party to submit to a mental or physical examination by a physician or physicians. The order (1) shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made and (2) may regulate the filing of a report of findings and conclusions and the testimony at the trial by the examining physician or physicians, the payment of the expenses of the examination and any other relevant matters."

This rule embodies the existing practice in this State. The inherent power of the trial court to order a medical examination of a party whenever his condition is relevant to the action is well established. *United Railways & Electric Co. v. Cloman,* 107 Md. 681, 69 A. 379; *Scheffler v. Lee,* 126 Md. 373, 94 A. 907; *Brown v. Hutzler Brothers Co.,* 152 Md. 39, 136 A. 30. While the cases cited involve physical examinations, the rule covers mental examinations as well, and we can conceive of no more compelling circumstances for the application of the rule for the procuring of mental examination of a party prior to the actual trial of the case than those presented in the instant case.

The application for the examination is addressed to the sound discretion of the trial court, which will not be interfered with unless such discretion is manifestly abused. In *United Railways & Electric Co. v. Cloman, supra,* 107 Md. at page 690, 69 A. at page 383, it is said:

"When, therefore, the ends of justice seem to require it, there can be no valid reason why an examination should not be permitted, if seasonable application is made, and the court is satisfied that no serious physical or mental injury is likely to be done the plaintiff." In the same opinion the court indicates that the examination should be made by some disinterested physician or physicians to be named by the court.

We do not feel that it was incumbent upon the chancellor in the present case to name the physician suggested by the appellant, but we are of the opinion that, upon the petition presented to him, he should have named two disinterested physicians of his own choosing to make the mental examination of the alleged incompetent, so that the appellant's contention with respect to the mental condition of Mrs. Lilly could be fairly presented to the jury, in the event that the examination by the disinterested doctors tended to prove her incompetency. The record discloses no valid reason for the refusal of such an examination, but on the contrary every indication in the record points to its necessity, and the ends of justice, for the preservation of Mrs. Lilly's estate, seem to require it. We, therefore, hold that the chancellor has abused the discretion vested in him by the rule, and that his order refusing the examination should be reversed.

It is contended, however, that the order is merely interlocutory in its nature and is not a final order, and that no appeal lies therefrom. Section 30, Article 5, Code of 1939, provides that, "An appeal shall be allowed from any final decree, or order in the nature of a final decree, passed by a court of equity." This court, in discussing this provision as it appeared in Section 20, Article 5, Code of 1860, in the case of *Waverly Mutual Building & P. L. L. & B. Association v. Buck,* 64 Md. 338, at page 342, 1 A. 561, stated at page 562: "The apparent object of this statutory restriction on the right of appeal is to prevent the protraction of litigation to an indefinite period by reiterated application for an ex-

ercise of the revisory powers of the appellate tribunal. If, for alleged errors in any interlocutory proceeding, a case could be brought here for revision, a multiplicity of appeals would create vexatious delay, and might eventually result in a ruinous accumulation of costs. To avoid this manifest evil, an appeal on a final determination of the questions presented by the issue brings every supposed erroneous ruling in the intermediate proceedings under review, when all such errors as are discovered can be corrected. The construction of the statute has elicited repeated decisions, and it is now a well-settled principle that the ruling of the court below, must, in order to form the proper basis for an appeal, be so far final as to determine and conclude the rights involved in the action, or to deny to the party who seeks redress by an appeal, 'the means of further prosecuting or defending the suit' in the court of original jurisdiction. *Boteler v. State*, 7 Gill & J. 109; *Welch v. Davis*, 7 Gill 364; *Green v. Hamilton*, 16 Md. 326; *Hazlehurst v. Morris*, 28 Md. 67."

In discussing orders in the nature of final decrees, Miller, in his Equity Procedure, par. 307, says: "An order in the nature of a final decree is one which finally settles some disputed right or interest of the parties." *Thompson v. McKim*, 6 Har. & J. 302; *Williamson v. Carnan*, 1 Gill & J. 184.

While we must not be understood as countenancing an appeal from every order construing the General Rules of Practice and Procedure, adopted in 1941, we do feel that from the very nature of the issue involved in the instant case the denial to the appellant of the privilege of having an examination of the alleged incompetent made by disinterested physicians prior to the sanity hearing before the sheriff's jury was tantamount to the denial to her of "the means of further prosecuting the suit" presented by her original petition. We feel that it would be futile for her to present her contentions to the sheriff's jury unless she were fortified by medical evidence on the only question involved, namely, the com-

petency *vel non* of Mrs. Lilly. Costs in the case would only be multiplied by proceeding with the hearing, with no prospect except an adverse adjudication, and a subsequent appeal to this court from a decree ratifying the inquisition of the sheriff's jury. *Ex parte Estate of Bristor, supra.* If we should then correct what we have now held to be an erroneous order, it would be necessary to repeat the entire procedure before the jury. We, therefore, hold that the order appealed from is such an order in the nature of a final decree that, under the circumstances of this case, we must entertain the appeal under Section 30, Article 5, Code of 1939.

The final question to be disposed of involves the appeal from an order of August 25, 1943, in the identical form of the order of August 18, 1943, passed upon an amended petition, setting out more in detail the facts alleged in the petition of August 18, 1943, but praying similar relief, the amended petition having been filed pursuant to leave of court granted on August 25, 1943. However, the record discloses that, by order dated August 18, 1943, passed upon the petition of the appellant, the proceedings in this cause were stayed pending the determination of her appeal from the order of August 18, 1943, which we have designated the first appeal. We feel that any proceedings in the case subsequent to the order of stay are a mere nullity and that the second appeal, from the order of August 25, 1943, must be dismissed.

> *Appeal from the order dated August 25, 1943, dismissed.*

> *Order dated August 18, 1943, reversed and cause remanded for the passage of an order in conformity with this opinion and for further proceedings, with costs to the appellant.*