746 A.2d 966

**Angel WILSON, et al.**

v.

**N.B.S., INC., et al.**

**No. 5363, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

March 1, 2000.

Alan Mensh (Saul E. Kerpelman, on the brief), Baltimore, for appellants.

Cynthia M. Dietz (Frank F. Daily, on the brief), Hunt Valley, for appellees.

Argued before BYRNES, ADKINS and MARY BETH McCORMICK (Specially Assigned), JJ.

BYRNES, Judge.

Angel Wilson ("Angel"), a minor, by her next friend, challenges the dismissal with prejudice of her lead paint premises liability action against N.B.S., Inc. ("N.B.S."). Angel's lawyers, Alan J. Mensh and Saul E. Kerpelman, also challenge an order of the circuit court directing Angel "and/or" her lawyers to reimburse N.B.S.'s insurance carrier for the amount of a " 'no show' fee" that an expert witness for N.B.S. charged when Angel failed to appear for a court ordered psychological examination. Angel and her lawyers pose the following questions for review, which we have rephrased and reordered:

I. Did the lower court err in ordering Angel's lawyers to pay the " 'no show' fee"?

II. Did the lower court err in granting N.B.S.'s motion to dismiss with prejudice, without affording Angel a hearing?

III. Did the lower court abuse its discretion in dismissing Angel's case with prejudice?

For the reasons that follow, we answer the first two questions affirmatively. Accordingly, we shall vacate the order

regarding payment of the " 'no show' fee," reverse the judgment, and remand the case for further proceedings consistent with this opinion. We do not reach the third question.

## FACTS AND PROCEEDINGS

From her birth in March 1991 until sometime in May, 1993, Angel lived at 1733 McCulloh Street, in Baltimore City, with her mother (Annette Butler), her older sister (Lisa Allen), and seven other siblings. N.B.S. owned the McCulloh Street property during the relevant time period. Angel contends that she was exposed to lead-based paint when she was living at the McCulloh Street property and that, as a consequence, she sustained lead poisoning, from which she continues to suffer ill effects.

On July 27, 1995, Angel brought a negligence action against N.B.S. in the Circuit Court for Baltimore City. The suit was filed by Ms. Butler, as Angel's next friend. In the complaint, Ms. Butler also brought a claim in her own right, for the loss of her minor child's services. N.B.S. answered the complaint and discovery proceeded.

In March 1997, more than a year after N.B.S. had propounded interrogatories to Angel that remained unanswered, it moved for sanctions under Rule 2–433, seeking, *inter alia,* dismissal of the case. Angel opposed the motion and requested a hearing. She argued that her lawyers had made numerous efforts to obtain information from Ms. Butler so as to answer the interrogatories, without success. She also informed the court that Angel was no longer in the custody of Ms. Butler but instead was being cared for by her adult sister, Lisa Allen, and that her lawyers had been unable to locate Ms. Allen.

On April 8, 1997, the lower court conditionally granted the motion for sanctions, without a hearing. It issued an order stating that the complaint "is hereby dismissed with prejudice, unless outstanding discovery is complied with within thirty (30) days of this order." Thereafter, on April 28, 1997, Angel filed a "Motion to Stay Operation of Discovery Order" and a

"Motion for Substitution of the Next Friend." She argued in support of these motions that her lawyers recently had located Ms. Allen, and had learned from her that Ms. Butler was mentally ill, had been committed to a psychiatric hospital, and was no longer able to care for Angel. For that reason, Ms. Allen had been granted guardianship of Angel in a Child in Need of Assistance proceeding. Angel represented that Ms. Allen was willing to act as her next friend in the suit and that because Ms. Allen had resided at the property in question, she had the requisite knowledge to provide discovery responses on Angel's behalf.

N.B.S. opposed the motions. The lower court granted them on June 9, 1997 and June 11, 1997, respectively, and thereafter, on July 25, 1997, issued a new discovery order setting various discovery deadlines and assigning a January 5, 1999 trial date.

On May 29, 1998, N.B.S. filed a motion for mental and physical examinations of Angel under Rule 2–423, which Angel opposed. The lower court granted the motion on July 6, 1998. Its order directed counsel for Angel to produce her for examinations by Gerard A. Gioia, Ph.D. and Joseph M. Scheller, M.D. (the expert examiners designated by N.B.S.) at the examiners' offices, "within twenty (20) days of this Order" (i.e., July 26, 1998). By agreement of counsel, the examinations were rescheduled for dates after that time: August 20 and 22, 1998 for Dr. Gioia and September 8, 1998 for Dr. Scheller.

Angel did not appear for her scheduled examination with Dr. Gioia. On August 31, 1998, N.B.S. filed a motion for sanctions under Rule 2–433. It explained that, at Dr. Gioia's insistence, its insurance carrier had advanced his $1,750 fee for the examination. It further stated that on August 18, 1998, a paralegal for counsel for N.B.S. had called Angel's counsel to confirm the August 20 and 22 dates and was told that he had been unable to reach Ms. Allen, and that Dr. Gioia's examination would have to be canceled. Because the cancellation took place less than ten days before the scheduled examination date, however, Dr. Gioia charged a $437.50 " 'no

show' fee," which he was retaining from the sum that had been advanced to him. N.B.S. asked the court to order Angel and her next friend and/or Angel's lawyers to reimburse N.B.S.'s carrier for the forfeited "no show" fee. It also asked the court to dismiss the complaint with prejudice.[1] N.B.S. requested a hearing on its motion.

Angel filed a timely opposition to the motion for sanctions and also requested a hearing. She stated that her lawyers had made good faith efforts to ensure that she would appear for the examination by making telephone calls to Ms. Allen, sending her letters, and offering to arrange for transportation. Angel also asserted that on August 14, 1998, her lawyers had informed the lawyers for N.B.S. that they had been unable to contact Ms. Allen to confirm the dates for Angel's examinations by Drs. Gioia and Scheller, and for that reason, they could not guarantee that Angel would appear for the examinations.[2]

On October 2, 1998, the lower court issued an order granting N.B.S.'s motion for sanctions, directing that "Plaintiffs and/or their counsel shall pay to [N.B.S.'s insurance carrier], through mailing to Defendants [sic] counsel, the amount of $437.50 in reimbursement of Dr. Gioia's fee," and further ordering that the complaint "be DISMISSED WITH PREJU-DICE, unless the exams are conducted within twenty (20) days of this order." (Emphasis in original.) The lower court did not hold a hearing.

Angel filed a motion for reconsideration and a request for a hearing on that motion. She argued, *inter alia*, that under Rule 2–311(f), the court was required to afford her a hearing before dismissing her complaint with prejudice. The record does not contain a response to the motion for reconsideration or a ruling on it.

---

**1.** Although the motion did not specify that the dismissal being requested was "with prejudice," a proposed order submitted by N.B.S. with the motion for sanctions used those words.

**2.** Angel did not appear for her appointment with Dr. Scheller either.

On October 27, 1998, N.B.S. filed a "Motion to Dismiss." The motion was filed under Rule 2–311, the general motions rule, and Rule 2–433, which is entitled, "Sanctions." N.B.S. asserted that as of October 22, 1998, Angel had not submitted to the examinations previously ordered by the court and had made no effort to reschedule them. Explaining that "[t]he condition which would have preserved Plaintiffs' cause of action [was] unfulfilled," N.B.S. asked the court to enforce its October 2, 1998 order and dismiss the complaint with prejudice. It did not request a hearing.

Angel filed an opposition to N.B.S.'s motion to dismiss and again requested a hearing. She argued that dismissal was not warranted because her lawyers had made good faith efforts to have her present for the examinations, without success; that the examinations could not be completed because her lawyers could not locate her or Ms. Allen, despite their best efforts; and that the lawyers for N.B.S. had not made efforts to reschedule the examinations in any event.

The lower court did not schedule a hearing. On December 8, 1998, it issued an order granting the motion to dismiss and dismissing the complaint with prejudice. This appeal followed.

## DISCUSSION

Because Questions I and II are interrelated, we shall discuss them together.

Under Rule 2–433, entitled "Sanctions," a circuit court may impose sanctions for certain failures of discovery, and for the failure to comply with an order compelling discovery. In addition, Rule 2–433 provides that in some circumstances, the court may order the attorney who advised the sanctionable conduct to pay the costs and expenses resulting from it.

Rule 2–423, entitled "Mental and physical examination of persons," provides, *inter alia,* that "when the mental or physical condition or characteristic of a party ... is in controversy, the court may issue an order directing the party to submit to ... [an] examination" and, in its order, the court "may regu-

late the filing and distribution of a report of findings and conclusions and the testimony at trial of the examiner, the payment of expenses, and any other relevant matters."

Angel's lawyers contend that the lower court erred in ordering them to pay Dr. Gioia's " 'no show' fee" because, under Rule 2–433, the court was empowered to impose such a sanction only if it first gave them an opportunity for a hearing and only if it found, as a matter of fact, that they had advised Angel not to appear for the examination. Because the court did neither, they argue, its order must be vacated.[3]

Angel contends that the lower court erred in the first instance because it did not afford her a hearing before it dismissed her case for failure to comply with its Rule 2–423 order for psychological examination. She also contends that the court abused its discretion in dismissing her case as a sanction for her having disobeyed its Rule 2–423 order.

N.B.S. counters the argument that Angel's lawyers advance about the " 'no show' fee" by arguing that, under the authority granted the court by Rule 2–423 to "regulate ... the payment of expenses," the court could pass an order requiring Angel's lawyers to pay the " 'no show' fee," without a hearing and without a showing of sanctionable conduct. N.B.S. reasons that because Angel and her next friend could not be located and were indigent, an order assessing the " 'no show' fee" against them would have been unenforceable and would have resulted, unfairly, in N.B.S. bearing that expense. It adds that, given that it already had sought and had been conditionally granted a dismissal of the action for Angel's failure to respond to interrogatories for over a year, the imposition of the " 'no show' fee" as a sanction against Angel and her

---

**3.** Angel's lawyers also point out that the court could not have ordered them to pay the " 'no show' fee" as a sanction under Rule 1–341 because there was no proof that Angel or Ms. Allen had acted in bad faith or without substantial justification in maintaining the action and therefore there could be no proof that they had advised any such conduct on their clients' parts. The court did not issue its order under Rule 1–341, and N.B.S. does not contend that the order properly could have been issued under that rule.

lawyers for her failure to appear for Dr. Gioia's examination was not an abuse of the court's discretion. N.B.S. has not addressed in its brief Angel's contention that the circuit court was required to hold a hearing before dismissing her claim. It argues, however, that Angel's repeated failures to provide discovery generally and to appear for the court ordered examinations specifically warranted the court's exercise of discretion to dismiss her action.

### (i)

Although the order directing Angel to submit to psychological and physical examinations by Drs. Gioia and Scheller was entered under Rule 2–423, the order directing Angel "and/or" her lawyers to pay Dr. Gioia's " 'no show' fee" was issued by the court as a ruling on N.B.S.'s motion for sanctions under Rule 2–433. To a great extent, the arguments put forth by the parties and by Angel's lawyers are premised on the assumption that Rule 2–433 sanctions apply when a party or other person who has been ordered to submit to an examination under Rule 2–423 fails to do so. We disagree with that premise.

 In construing the Maryland Rules, we apply principles of interpretation similar to those used to construe a statute. *Holmes v. State*, 350 Md. 412, 422, 712 A.2d 554 (1998); *State v. Harrell*, 348 Md. 69, 79, 702 A.2d 723 (1997). We first look to the text of the rule, and give its words their usual and ordinary meaning, consistent with logic and common sense. If the words are clear and unambiguous, our inquiry ends. *Id.* at 80, 702 A.2d 723. Generally, we look elsewhere to discern the intent of the Court of Appeals in promulgating the rule when the text of the rule is ambiguous. *Greco v. State*, 347 Md. 423, 428, 701 A.2d 419 (1997). Even if the language of the rule is clear, however, we may consider other sources that bear on the purpose or goal of the rule. *State v. Wiegmann*, 350 Md. 585, 592–93, 714 A.2d 841 (1998).

Rule 2–433 addresses two discovery failure situations, and provides for each that the court may enter such orders in

regard to the failure as are just, including orders imposing sanctions, as specified. The first situation, which is dealt with in subsection (a) of the rule, arises when a party (or in some instances a party's designee) has committed one of the discovery failures listed in Rule 2–432(a), and the opposing party has moved for immediate sanctions. These discovery failures are: 1) not appearing for a properly noticed deposition; 2) not serving a response to a properly served request for production of documents; and 3) not serving a response to properly served interrogatories.

The second discovery failure situation, which is addressed by Rule 2–433(b), occurs when a "person" has not obeyed an "order compelling discovery." Under Rule 2–432(b), an "order compelling discovery" may be obtained for the following discovery failures: 1) those enumerated in Rule 2–432(a), as we have described above; 2) failure to answer a written or oral deposition question; 3) failure by a corporation or other entity to make a designation under Rule 2–412(d); 4) failure to answer an interrogatory under Rule 2–421; 5) failure to comply with a request for production of documents or a request for inspection under Rule 2–422; 6) failure to supplement a response under Rule 2–401(e); and 7) failure by a non-party to produce tangible evidence without having filed a written objection under Rule 2–510(f).

The plain language of Rule 2–433 thus reveals that neither of the discovery failure situations covered by the rule includes noncompliance with a Rule 2–423 order for examination.

The history behind the adoption of Rules 2–432 and 2–433 is helpful in that it also shows that the sanctions set forth in Rule 2–433 were not meant to apply to a failure to comply with a Rule 2–423 examination. Rules 2–432 and 2–433 were derived from former Rule 422, which covered sanctions for, *inter alia*, noncompliance with an order to submit to a mental or physical examination under former Rule 420 (the predecessor to Rule 2–423). Rule 422 was entitled "Failure to Comply With Orders for Discovery." From 1957, when the Maryland Rules of Practice and Procedure were adopted by the Court of

Appeals, until 1973, Rule 422 provided that for enumerated discovery violations, including a party's failure to comply with a Rule 420 order, a circuit court could impose sanctions as were just, including taking a matter as being established, dismissing the action, and other penalties. A 1973 amendment to Rule 422 removed from the list of discovery failures for which sanctions could be imposed a party's failure to submit to an examination ordered under Rule 420. At the same time, however, the rule was rewritten to include subsection (b), under which the court could impose sanctions, including dismissal, for noncompliance with an "order permitting discovery." Thus, even though a specific reference to Rule 420 was deleted from Rule 422, subsection (b) still authorized the imposition of sanctions against a party for failure to comply with a Rule 420 order for examination.

Effective July 1, 1984, the Court of Appeals rescinded the existing Maryland Rules of Practice and Procedure and adopted a substantially revised set of rules. Almost four years earlier, in late 1980, the Court of Appeals Standing Committee on Rules of Practice and Procedure ("Rules Committee") began the process of considering proposals for revised discovery rules. With respect to sanctions, it first considered proposed Rule 2–412, which would have incorporated much of the language of Rule 422(b). Specifically, proposed Rule 2–412(d) would have provided that if a party "fail[ed] to obey an order requiring him to provide or permit discovery" the court could impose sanctions, including dismissal. The minutes of the October 18, 1980 meeting of the Rules Committee confirm that proposed Rule 2–412(d) was meant to apply when a party failed to submit to an order for mental or physical examination. Indeed, the Rules Committee directed its Style Subcommittee to revise the wording of proposed Rule 2–412(d) to make that clear.

Thereafter, in 1981, proposed Rule 2–412 was broken down into three new proposed rules: Rule 2–432 "Sanctions for Failure to Provide Discovery"; Rule 2–433 "Motion for Order Compelling Discovery"; and Rule 2–434 "Failure to Comply with Discovery Order." One draft of proposed Rule 2–434

incorporated the language previously included in proposed Rule 2–412(d) and added, consistent with the Rules Committee's directive, that failure to comply with an order entered pursuant to Rule 2–423 would constitute a sanctionable "Failure to Comply with a Discovery Order."

By late 1981, however, the proposed rules had been revamped so that discovery violations and sanctions would be covered by two, not three, proposed rules: Rule 2–432 "Motions Upon Failure to Provide Discovery," and Rule 2–433 "Sanctions." Proposed Rule 2–432 was redrafted to provide, at subsection (b), for a motion for order compelling discovery and to specify the precise discovery violations for which an order compelling discovery could be sought. Those violations did *not* include noncompliance with a Rule 2–423 order. At the same time, Rule 2–433 was redrafted to authorize, at subsection (b), the imposition of sanctions for failure to comply with an "order compelling discovery." The combined effect of these revisions was to replace the broad language of Rule 422(b), under which a court could impose sanctions for the failure to comply with an order permitting discovery, with narrowly drawn and specific language authorizing sanctions for the failure to comply with an "order compelling discovery," which could be entered only upon certain violations, not including noncompliance with a Rule 2–423 order. Consequently, the proposed discovery violations and sanctions rules (2–432 and 2–433) no longer covered noncompliance with an order for physical or mental examination. *See* Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary*, 314–15, 318–20 (1992).

■ Maryland case law teaches that merely because a specific discovery failure is not covered expressly by the sanctions rule, in and of itself, does not mean that the rule is inapplicable. When the conduct of a party or a deponent technically does not constitute a failure to abide by the rules of discovery, the court nevertheless may have rule-based sanctions authority, under Rule 2–433.

In *Klupt v. Krongard,* 126 Md.App. 179, 728 A.2d 727, *cert. denied,* 355 Md. 612, 735 A.2d 1107 (1999), we affirmed the lower court's dismissal of a party's counterclaim as a sanction for his destruction of critical tape recordings for which a discovery request was outstanding. We noted that even though the Maryland Rules do not deal explicitly with the destruction of evidence, Rule 2–433 permits the dismissal of a party's claim as a sanction for failure to respond to a request for production of documents and failure to obey an order compelling the production of documents. We concluded that the sanction of dismissal may be imposed under Rule 2–433 for the destruction of evidence sought in discovery, reasoning that

> [d]estruction of evidence ... would render hollow any response to a request for production, even if timely filed, just as it would render an order to compel moot. If dismissal is permissible in those cases, it would seem to be a fortiori permissible in a case of destruction of discoverable evidence.

126 Md.App. at 194, 728 A.2d 727. (Citations omitted).

Likewise, in *Womble v. Miller,* 25 Md.App. 656, 336 A.2d 138 (1975), *cert. denied,* 275 Md. 758 (1975), which was discussed in *Klupt,* this Court affirmed the lower court's imposition of sanctions under the Maryland Rules for conduct not addressed explicitly by the discovery rules. In *Womble,* a *pro se* plaintiff in a tort action appeared for his deposition but refused to participate without being given access to the discovery rules and cases and time to refer to them. The deposition was aborted before any questions were posed, and the lower court ultimately sanctioned the plaintiff for refusing to submit to a deposition. *Id.* at 663, 336 A.2d 138. At that time, Rule 422, which, as we have explained, was the predecessor to Rules 2–432 and 2–433, permitted the circuit court to impose sanctions against a party who failed to appear for his deposition or failed to answer a question posed during deposition. *Id.* at 666, 336 A.2d 138. The plaintiff argued that because he had appeared for his deposition and had not refused to answer any questions (as none had been posed), the court was without

authority to sanction him under Rule 422. *Id.* at 663, 336 A.2d 138.

This Court disagreed. Reasoning that the Court of Appeals, in adopting Rule 422, had not intended "to provide therein against every conceivable contingency that could arise, but rather applied a broad rule vesting the trial court with discretion as to the rule's enforceability," *id.* at 666, 336 A.2d 138, we held that the lower court was authorized by Rule 422 to impose sanctions, even though the plaintiff's conduct did not fit squarely into one of the discovery violations enumerated in that rule.

We glean from these cases and from the language of Rule 2–433 that the circuit court's authority to impose sanctions under that rule applies to certain rules violations, as enumerated; to orders compelling compliance with the rules after they have been violated; and, as explained in *Klupt* and *Womble,* to discovery abuses not explicitly covered by the rules, but implicitly covered by them. As we have observed, the language of Rule 2–433 does not authorize sanctions for the failure to comply with a Rule 2–423 order because a Rule 2–423 order is not a violation of an "order compelling discovery," under Rule 2–432. The history behind the 1984 rules revisions indicates to us that the language changes that resulted in disobedience of an order for physical or mental examination no longer being covered by the sanctions rule were the product of careful deliberation and an intention to effect that result. In addition, we see a distinction between the failure to obey an order for examination issued under Rule 2–423 and the discovery rule violations involved in *Klupt* and *Womble* that militates against reading Rule 2–433 to cover, implicitly, the conduct at issue here. The discovery violations to which Rule 2–433 sanctions apply are violations of discovery afforded by rule, not by court order.[4]

---

4. Rules 2–432 and 2–433 do not pertain to request for admissions under Rule 424. That rule itself addresses, *inter alia,* challenges to the court over the adequacy of a response, the effect of not responding, and the payment of expenses by a party upon the failure to admit the genuine-

The rules themselves allow a party to a civil action to propound interrogatories, requests for production or inspection and for admission, and to take depositions. Ordinarily, leave of court is not required; a party is entitled to engage in those modes of discovery, unless the court issues a protective order providing otherwise. The rules do not, however, entitle a party to obtain a mental or physical examination of the opposing party. That requires application to the court for an order and a showing of good cause. Thus, the failure to abide by a Rule 2–423 order for examination is not a discovery violation, like the other violations covered by Rule 2–433. *See State v. Musgrove,* 241 Md. 521, 531, 217 A.2d 247 (1966)(observing distinction between Rule 422 and other discovery rules). Given that Rule 2–423 simply provides a means by which to seek and obtain discovery through court order, while the sanctions under Rule 2–433 apply to discovery rule violations and noncompliance with orders compelling discovery to which parties ordinarily are entitled, we are not persuaded that noncompliance with a Rule 2–423 order is conduct implicitly covered by the sanctions rule.

■■■ We hold that Rule 2–433 is not implicated when a party has not complied with a Rule 2–423 order for examination. Therefore, sanctions could not properly be obtained under Rule 2–433 against Angel or her lawyers for Angel's failure to attend the court ordered psychological examinations.

### (ii)

Even though the court did not have rule-based authority to impose sanctions for Angel's failure to abide by its order for examination, that does not mean that the court was powerless to take action. As we discussed in *Klupt v. Krongard, supra,* trial court have inherent authority to regulate the discovery process. In that case, we held that the court not only had the power under Rules 2–432 and 2–433 to impose the sanction of dismissal for destruction of evidence, but also had the power

---

ness of a document later proven to be genuine or the truth of a fact later proven to be true.

to do so as part of its inherent power to control and supervise discovery. 126 Md.App. at 195–96, 728 A.2d 727. Judge Thieme, writing for the Court, explained:

The United States Supreme Court has been constant in asserting the inherent authority of courts of law properly to regulate proceedings that come before them. "The inherent powers of federal courts are those which 'are necessary to the exercise of all others.'" *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)(quoting *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed.259 (1812)). Those powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

Proceeding from this understanding of inherent authority and powers, the federal courts have frequently dealt with cases of discovery misconduct that do not fall directly under the federal rules but in which sanctions of the type allowed under Rule 37 would nevertheless be appropriate. The consensus is that, whether or not the discovery sanctions rule applies, the court retains and "relies on its inherent power to regulate litigation, preserve and protect the integrity of the proceedings before it, and sanction parties for abusive practices." *Capellupo v. FMC Corp.,* 126 F.R.D. 545, 551 (D.Minn.1989); *see also White* [*v. Office of Public Defender* ], 170 F.R.D. [138,] 148 [ (D.Md.1997) ]; *Turner* [*v. Hudson Transit Lines, Inc.],* 142 F.R.D. [68,] 72 [ (S.D.N.Y. 1991) ]; *National Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556 (N.D.Cal.1987).

*Id.* at 196–97, 728 A.2d 727.

In cases pre-dating the adoption of rules of civil procedure in Maryland, the Court of Appeals recognized that trial courts possess the inherent power to order a party to a civil action to submit to a physical or mental examination when that party's physical or mental condition is at issue. Moreover, they have the inherent power to impose the ultimate sanction of dismiss-

al when a plaintiff refuses to submit to the court ordered examination.

In *United Rys. & Elec. Co. v. Cloman,* 107 Md. 681, 69 A. 379 (1908), the Court held in a case of first impression that the circuit court was empowered to require a plaintiff in a personal injury action to submit to a physical examination. It explained:

> The authorities are conflicting on the subject. It is said that there is no record in the English reports of such an order, or even of such a motion. In the federal courts it is held that the court has no power to compel a plaintiff in an action for personal injuries to submit his person to a physical examination, and it was so decided in *Union Pac. R. Co. v. Botsford,* 141 U.S. 250, 11 Sup.Ct. 1000, 35 L.Ed. 734 [(1891)]. The weight of authority seems to be to the contrary, in the state courts of this country, although, while the power is admitted many cautions and limitations are suggested, and the general rule is that it cannot be demanded as a matter of right by the defendant, but the application is addressed to a sound discretion of the trial court, which will not be interfered with by an appellate court unless such discretion was manifestly abused. That seems to us to be the correct view.

*Id.* at 690, 69 A. 379. Thereafter, in *Scheffler v. Lee,* 126 Md. 373, 94 A. 907 (1915), the Court affirmed the trial court's dismissal of a plaintiff's personal injury action for failure to submit to an order for physical examination. Finally, in *Brown v. Hutzler Bros.,* 152 Md. 39, 136 A. 30 (1927), the Court did the same. After discussing *United Rys. & Elec. Co. v. Cloman* and *Scheffler v. Lee,* the Court stated:

> These cases fully establish the power of the court, in its discretion, to pass [an order directing the plaintiff to submit to a physical examination] and to enter a judgment of non pros. against the plaintiff, when she refuses to comply therewith.

*Id.* at 47, 136 A. 30.

In 1941, the Court of Appeals adopted the General Rules of Practice and Procedure. Those rules included Discovery Rule

5, which incorporated the Court's holdings that it is within the discretion of the trial courts to order physical and mental examinations of parties, upon good cause shown. As the Court explained in *Purdum v. Lilly*, 182 Md. 612, 35 A.2d 805 (1944):

> [Discovery Rule 5] embodies the existing practice in this State. The inherent power of the trial court to order a medical examination of a party whenever his condition is relevant to the action is well established.

*Id.* at 619, 35 A.2d 805. Discovery Rule 5, on which present Rule 2–423 remains modeled, did not address the inherent power of the court to take action against a party, including dismissal of the party's action, for failure to submit to a court ordered physical or mental examination. Rather, it prescribed the type of case in which an order for physical or mental examination could be requested, the means by which a party could go about requesting such an order, the good cause requirement for such an order, the information that the court was required to include in the order, and provisions that the court could make in the order. Maryland Rule 420 incorporated the language of Discovery Rule 5. As we have explained, Rule 420 was the predecessor to Rule 2–423.

At no time has Rule 2–423 contained, or did Rule 420 or Discovery Rule 5 contain, language purporting to limit the inherent power of the trial court to take action, including its authority to impose sanctions, upon the failure of a party to comply with an order to submit to a physical or mental examination. The inherent power of the trial court to impose sanctions upon a party for the failure to comply with an order to submit to a mental or physical examination, as recognized by the Court of Appeals in the early part of the last century, was not disturbed by the adoption of those rules. Under its inherent authority to supervise and control discovery, the circuit court may impose sanctions upon a party, including the ultimate sanction of dismissal, for failure to comply with an order to submit to a physical or mental examination under Rule 2–423. *Cf. Parker v. Housing Authority*, 129 Md.App. 482, 487, 742 A.2d 522 (1999), *cert. denied,* No. 607, 357 Md.

483, 745 A.2d 437 (Md. Feb. 10, 2000)(circuit court has authority to condition an expert's testimony on the examination of a non-party, even though Rule 2–423 does not authorize the circuit court to order an examination of a non-party).[5]

In addition, Rule 1–202(a) provides:

These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

*See also Schaller v. Castle Dev. Corp.,* 347 Md. 90, 96, 698 A.2d 1106, (1997). Although Rule 2–423 does not itself mandate or prohibit conduct, it elevates to a rule the court's inherent power to order mental and physical examinations as part of pre-trial discovery in appropriate civil cases, and grants the court the power under that rule to issue an order that is mandatory. It does not prescribe, however, the consequences of noncompliance. If the totality of the circumstances of the case and the purpose of the rule warrant it, the court may exercise its inherent authority to dismiss an action with prejudice for failure to comply with an order for examination under Rule 2–423.

██ For the reasons we have explained, the circuit court had the inherent power to dismiss Angel's cause of action for her failure to comply with its order for examination. We will not address the question whether the court abused its discretion in doing so (the third question presented on appeal),

---

**5.** In addition, even before the adoption of Discovery Rule 5, the trial court had the inherent authority to supervise the logistics of an examination that it had ordered as part of discovery, including the authority to allocate the source of payment of the examination between or among the parties. Thus, Rule 2–423 and its predecessor rules merely afforded the court an additional source of authority to regulate the payment of expenses related to an ordered examination.

because we agree with Angel that the court erred in dismissing her case with prejudice without affording her a hearing.

■■■ Rule 2–311, entitled "Motions," provides, in relevant part:

(a) **Generally.** An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be in writing, and shall set forth the relief or order sought.

(b) **Response.** Except as otherwise provided in this section, a party against whom a motion is directed shall file a response within 15 days after being served with the motion. . . .

\* \* \* \* \*

(e) *Hearing* — **Motions for judgment notwithstanding the verdict, for new trial, or to amend the judgment.** When a motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the court shall determine in each case whether a hearing will be held, but it may not grant the motion without a hearing.

(f) **Hearing — Other motions.** A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall so request in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, *but it may not render a decision that is dispositive of a claim or a defense without a hearing if one was requested as provided in this section.*

(Emphasis supplied). Within the meaning of Rule 2–311(f), a decision is "dispositive" when it conclusively settles a matter, *Lowman v. Consolidated Rail Corp.,* 68 Md.App. 64, 76, 509 A.2d 1239, *cert. denied,* 307 Md. 406, 514 A.2d 24 (1986), and "actually and formally dispose[s] of the claim or defense." *Shelton v. Kirson,* 119 Md.App. 325, 331, 705 A.2d 25, *cert. denied,* 349 Md. 236, 707 A.2d 1329 (1998).

In *Karl v. Blue Cross,* 100 Md.App. 743, 642 A.2d 903, *cert. denied,* 336 Md. 558, 649 A.2d 601 (1994), this Court held that when dismissal of a case is requested as relief in a motion for sanctions, Rule 2–311(f) mandates that the court hold a hearing before granting the dismissal. In that case, after the plaintiff failed to produce discovery in accordance with an order compelling him to do so, the defendant filed a motion for sanctions under Rule 2–433 asking, *inter alia,* that the case be dismissed. The defendant requested a hearing, which was scheduled, but was not held. Instead, the court granted the motion for sanctions and dismissed the complaint without a hearing. Judge Alpert, writing for the Court, explained that "a requested hearing must be provided before a court may grant a motion for sanctions that is dispositive of a claim or defense; i.e., before granting a motion to dismiss the case." *Karl,* 100 Md.App. at 747, 642 A.2d 903; *see also, Parker, supra,* 129 Md.App. at 488, 742 A.2d 522.

In the case *sub judice,* the lower court granted N.B.S.'s motion to dismiss, with prejudice, without holding a hearing. The only rule governing the holding of a hearing on the motion was Rule 2–311(f), which guaranteed to Angel the right to a hearing before the court could grant the requested dismissal. Certainly, dismissal of Angel's claim with prejudice was dispositive of her claim. Accordingly, the circuit court was without discretion to grant the dismissal without first holding a hearing, and erred in doing so.

### (iii)

Having established that, notwithstanding that a trial court is not authorized by rule to sanction a party for noncompliance with a Rule 2–423 order, it nevertheless has the inherent authority to sanction a party for such noncompliance, we turn to the issue raised by Angel's lawyers: When a party has not complied with a Rule 2–423 order for examination, may the trial court order that party's lawyers to pay the expenses associated with the examination, either under its Rule 2–423 authority to "regulate expenses" or under its inherent authority to control and supervise discovery? And if

so, may the court take such action without holding a hearing and without making a finding that the attorney advised the conduct?

When Discovery Rule 5 first was adopted, it provided that, in its order directing a party to submit to an examination, the court could "regulate the filing of a report of findings and conclusions and the testimony at the trial by the examining physician or physicians, the payment of the expenses of the examination and any other relevant matter." In nearly sixty years, that language has changed little.[6] As we have noted, in its present iteration, Rule 2–423 states that an order for examination "may regulate the filing and distribution of a report of findings and conclusions and the testimony at trial by the examiner, the payment of expenses, and any other relevant matters." In 1997, the phrase "payment of expenses of the examination" was changed to "payment of expenses," in recognition that, just as occurred in this case, an expense associated with an examination may be incurred even if the ordered examination does not take place.

Clearly, the court's Rule 2–423 authority to "regulate ... the payment of expenses" includes the authority to order a party (or another person subject to the rule) to pay the cost of the examination or costs associated with it, such as a "no show" or cancellation fee. *Cf.* Rule 2–402(e)(3)(unless manifest injustice would result, the court "shall require" a party who has sought discovery, by deposition or otherwise, of an opponent's expert witness who may be called to testify at trial to pay the expert a reasonable fee.) The court's decision in that regard is a matter of discretion, and is subject to

---

6. In 1997, in reaction to this Court's decision in *Kerpelman v. Smith, Somerville & Case,* 115 Md.App. 353, 693 A.2d 357 (1997), that the word "physician" did not encompass "psychologist," the Court of Appeals changed Rule 2–423 to substitute "suitably licensed examiner" for "physician," thereby permitting trial courts to order examinations by non-physician examiners under the rule. *See cmt.* Rule 2–423. In conformity with that change, the last clause of the rule was changed to eliminate the words "examining physician or physicians" and to replace them with the word "examiner." *Id.*

review for abuse. In this case, Angel does not challenge the court's exercise of discretion to impose the expense of the examination, i.e., the " 'no show' fee," upon her.

■■■ We have found nothing in the language or history of Rule 2–423, or of its predecessor rules, to support the notion that the trial court's authority, under the rule, to "regulate ... the payment of expenses" includes the power to order a lawyer for one who is subject to an order for examination to pay the expenses associated with it—whether or not the examination has taken place. To the contrary, the court's authority under Rule 2–423 is over *parties* to civil actions and persons in the custody or legal control of *parties*. The court's rule-based power to order mental or physical examinations does not extend to anyone else. Moreover, the balance of the rule does not address the authority of the court; rather, it addresses what the court must and may include when it issues an order under the rule. The court *must* state in the order the time, place, manner, conditions, and scope of the examination, and the identity of the examiner. Other matters relating but tangential to the examination *may* be covered by the order, but need not be: the "filing and distribution" of a report of the examiner, the giving of trial testimony by the examiner, the payment of expenses relating to the examination, and "any other relevant matters." With respect to parties, the court already has authority to control these matters; they are mentioned in rule to make plain that the court may address them in its order, if it so chooses. Thus, the clause at issue ("regulation .... of payment of expenses") does not grant the court the authority to impose upon a lawyer the payment of expenses associated with a court ordered examination beyond whatever authority the court already may have to do so.

■■■■ The court's inherent authority to regulate and control the proceedings before it includes the power to sanction lawyers for improper conduct before the court. *See Brady v. The Hartford Fire Insurance Co.*, 610 F.Supp. 735 (D.Md.1985)("Attorneys are exposed to sanctions of all kinds

when they come before the court and their conduct is deemed improper."). Except in the case of a good faith and appropriate proceeding to challenge a court's ruling, it is improper for a lawyer to advise his client to violate a court order. *Attorney Grievance Commission v. Kerpelman*, 288 Md. 341, 379, 420 A.2d 940, *cert. denied*, 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1980); *Carter v. State*, 73 Md.App. 437, 442, 534 A.2d 1015 (1988); Md. Rules of Prof. Conduct, 8.4(d)("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."). As we have indicated, under Maryland Rule 2–433(c), if the court grants a motion for failure to provide discovery under Rule 2–432, or a motion for protective order under Rule 2–403, or if it finds that a person has failed to comply with an order compelling discovery, it may sanction a lawyer who advised the failure to act by making an award of reasonable expenses, including attorney's fees. Before doing so, the court must afford the lawyer an opportunity to be heard. That requirement comports with due process. *Talley v. Talley*, 317 Md. 428, 434, 564 A.2d 777 (1989)(constitutional guarantee of due process—fair notice and opportunity for a hearing—applies to assessment of attorney's fees for litigation misconduct); *Watson v. Watson*, 73 Md.App. 483, 497, 534 A.2d 1365 (1988).

 We hold that the trial court's inherent authority to regulate the conduct of discovery permits it to order a lawyer who has advised his client not to comply with an examination ordered under Rule 2–423, and whose client has acted on that advice, to pay the expenses associated with the examination. The court may do so, however, only after giving the lawyer notice and an opportunity to be heard.

In this case, the court did not give Angel's lawyers an opportunity to be heard, though they requested a hearing several times, and it ordered them "and/or" their client to pay Dr. Gioia's " 'no show' fee" without taking evidence on the question whether the lawyers advised Angel (or Ms. Allen) to disobey the order for examination, and without a finding on that critical issue. Although, as we have explained, the court

was authorized, under Rule 2–423, to impose the cost of the examination on Angel, its decision to do so apparently was made in tandem with its decision to impose the cost of the examination on the lawyers as well. For that reason, we shall vacate the order in its entirety. On remand, the court may revisit the issue in light of this opinion.[7]

**ORDER OF OCTOBER 2, 1998 VACATED. JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

---

**7.** We note that under Rule 2–423, a court may allocate the payment of expenses associated with an examination in its order, in advance of the examination. If the court orders a party who is indigent to pay the expenses of the ordered examination, that party's attorney may pay the expenses on behalf of the client. *See* Md. Rules of Prof. Conduct, 1.8(e)(2)(a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client). Depending upon the outcome of the case, the attorney may wind up absorbing those expenses in any event.